HODGES v. LIPSCOMB.

(Filed March 26, 1901.)

ESTATES—*Wills—Sale of Contingent Remainder.*

> The Courts will not decree a sale of land where it is limited in
> remainder to persons not *in esse.*

ACTION by Samuel Hodges and wife Minnie D. Hodges,
Eliza D. Hodges, Wiley D. Hodges, Emily N. Hodges, S. W.
Hodges, Robert G. Hodges and Minnie R. Hodges (the last
six being infants and appearing by their next friend, Samuel
Hodges), E. F. McDaniel and wife Bettie E. McDaniel,
Paul Slocumb and wife Minnie C. Slocumb, Sarah H.
McDaniel, Georgia B. McDaniel, Bettie McDaniel, Madge
McDaniel, and Albert A. Slocumb (the last five being infants
and appearing by their next friend, E. F. McDaniel), plain-
tiffs, against James Lipscomb, Ernest Deans, Herbert Roun-
tree and James B. Rountree, heard by Judge *A. L. Coble,* at
February Term, 1901, of WILSON County Superior Court.
From judgment ordering a sale of property, the defendants
appealed.

*Connor & Connor,* for the plaintiffs.
No counsel for the defendants.

CLARK, J.   When one closes his eyes on sublunary scenes,
and from his cold grasp drops the things for which he has

toiled, or sinned, he has no natural right to direct what shall become of them thereafter. The right to dispose of property by will is purely statutory, as Mr. Blackstone tells us. From the Conquest down to the comparatively recent Statute of Wills, 27 and 32 Henry VIII, the power to dispose of realty by will did not exist in England (2 Bl. Com., 374). This right is not recognized, or recognized only to a limited part of the estate, in France and many other countries. As it is given by statute it may be modified or revoked by statute.

Few men comparatively can manage their estates to the best advantage when living. When one undertakes by will to tie up his estate and confer it upon contingent remainders, and remainders in a double aspect, and upon the other complications presented in the case before us, the result is almost necessarily detrimental to those intended to be benefited, and calls in question the wisdom of the statute which permits a dead hand to control to such an extent the devolution of property. No human wisdom can foresee the condition of the beneficiaries and of the property in the shifting combination of events. Circumstances will always arise which inevitably will make desirable a change of investment or of the limitations. But as long as the law remains unchanged by statute, the Courts can not change it. Desirable as is the relief here sought, the law is so well settled that it is a matter of some surprise that the point could be again submitted to the Courts. The abuses arising from the unrestricted power of a testator over devised estates in tying them up caused long years ago the passage of the "Thelusson" act, restricting such power of future control to "life, or lives in being and twenty-one year thereafter." It is for the legislative power, not for the Courts, to consider whether that act should not be extended so as to prevent limitations such as here appear and which are equally against public policy and the interest of the immediate devisees.

In the present case the testator devised one piece of property to his adopted daughter Minnie for life and "at her death to such child or children as she may leave surviving her, and if any of said children shall die, leaving issue, prior to the death of said Minnie, in that event such issue shall represent and take the share of its immediate ancestor." Another piece of realty is given to testator's adopted daughter Bettie for life, with remainders over in the same terms used above.

Another tract is given to Minnie and Bettie "to be divided between them in the following proportions, to-wit: to the said Minnie such part as the number of children which she may have living at my death, or (*sic*) born unto her thereafter, as hereinafter provided, shall bear to the whole number of children which she and the said Bettie may have living at my death, *or* born unto her, as herein provided, shall bear to the whole number of children which she and the said Minnie shall have living at my death, *or* born unto them thereafter.

"If either the said Minnie or the said Bettie shall after my death have born unto them any child or children, then and in that event I wish and direct the portions hereinbefore given to them to be so changed that the same may and shall conform to the principle of division hereinbefore set forth; that is to say, that the said after-born child or children shall be counted and provided for in the same manner as if living at the time of my death, my purpose and intention being to make the number of children the said devisees may have the basis of the division of my estate between them. The said devisee shall have and take the said plantation, in the proportion hereinbefore set forth, for and during their natural lives and the life of each of them, and upon their death, or the death of either of them, the share or portion given to the one so dying shall pass to and vest in the child or children which may survive her and the issue of such child or children as

may die during the lifetime of the said mother, such issue representing and taking the portion of its immediate ancestor in the same proportion as such ancestor would have done if surviving the mother."

By the residuary clause the residue is left to Minnie and Bettie "in the same proportion and subject to the same limitations" as the tract of land last above mentioned. The testator then says: "If, however, the said Minnie or the said Bettie shall die leaving no child or children living at her death, nor the issue of any child or children, then and in that event the portion or shares given her in severalty in this will shall pass to and vest in the survivor, in the same manner and subject to the same limitations as herein set forth in respect to the original share or portion. If both the said Minnie and the said Bettie shall die leaving no child or children, nor the issue of any child or children, living at their death, or the death of the survivor, then and in that event, I direct that my entire estate shall be divided equally between my heirs-at-law and distributees and the heirs-at-law and distributees of the said Minnie and Bettie, claiming and entitled through their mother. In making such partition my executors shall be guided and controlled by the canons of descent and the statute of distribution in force in North Carolina."

Both Minnie and Bettie are living, one aged 45 years and the other 43. The complaint avers, as we may well believe, that their interest and that of their living children, all of whom are minors, except one, would be enhanced by a sale of portions of the real property and its conveyance to the purchasers "free from the limitations set out in the will" and the investment of the proceeds in buildings on the other realty, subject to the approval of the Court.

The complaint further avers, as we may well believe also, that in consequence of above limitations parties refuse to purchase, fearing that they can not get a good title.

The complaint avers that "the defendants will be the heirs-at-law and distributees of said Minnie and Bettie in the event of their death without issue, or the issue of such issue." It is difficult to see how that can be averred. It is true they might be the heirs-at-law and distributees if Minnie and Bettie should die now without issue, but it is impossible to say who would be their heirs-at-law and distributees when they shall die, if they shall then leave no issue—the contingency named in the will.

Besides, the testator's heirs-at-law and distributees who are to share with the heirs-at-law and distributees of Minnie and Bettie, in event of their decease without issue. are not even named as defendants, and of course who they would be when that contingency might happen could not now be known.

The confidence of testators who thus think they can wisely control the management and descent of their property uncounted years after they have gone hence is not less astonishing than their willingness to entrust to the wisdom of grandchildren, or great-grandchildren, or contingent and still more remote and utterly unknown remaindermen, an untrammelled ownership of the property which they are unwilling to bestow upon their own children.

But as such latitude is allowed, we must take the law as we find it written.

In *Watson v. Watson,* 56 N. C., 400, where the devise was to "testator's son for life, then to such children as might be living at his death and the issue of such as might have died leaving issue, and if the testator's son should die without leaving issue living at his death then to certain persons" (named in the will), it was held that the Court could not sell the property on petition of the son though he was young and unmarried and all the persons named in the will as contingent remaindermen except one had released to the son—all of them being parties defendant and the testator's son being plaintiff.

The reason given is that where the contingency is limited to a person not *in esse* the Court can not decree a sale.   To same effect *Watson v. Dodd,* 68 N. C., 528; S. C., 72 N. C., 240. A contingent remainder can not be sold under execution (*Bristol v. Hallyburton,* 93 N. C., 384), and of course it can not be sold by order of Court when the contingency has not yet happened which shall determine who the remaindermen are, as the heirs-at-law and distributees of testator and of Minnie and Bettie at the time when they may happen to die leaving no issue.

In *Ex Parte Dodd,* 62 N. C., 97, it was held that where any members of a class to whom an executory devise is limited are *in esse* the Court may order, in a proper case, a sale of the devised land, *otherwise* when no such members are *in esse.*   This has been well settled ever since.   *Irvin v. Clark,* 98 N. C., 445.

In *Williams v. Hassell,* 74 N. C., 434, affirming S. C., 73 N. C., 174, it is held that under a devise to "A, B and C for life, with remainder to such of their children as should be living at their death,"the land could not be sold for parti-tion though one of the life tenants had died leaving two chil-dren, because though these two remaindermen were known the others were not yet ascertained and the land "can not be sold in any way or by any person" till they are.   This case has been cited and approved in many cases which can be readily found upon turning to Mr. Monroe's valuable table of "Marginal Annotations."   In that case the Court calls attention to the distinction between a limitation over "to the children of the life tenant" in which event the class being known the land can be sold upon proper proceedings (for the children then born represent those thereafter) and a devise (like this) to "such children as shall be living at death of life tenant."

There are several other complications in the case at bar,

among them the devise "to such children as may then be living *or* born thereafter." Among many cases on same line, *Justice v. Guion,* 76 N. C., 442; *Miller Ex Parte,* 90 N. C., 625; *Overman v. Simms,* 96 N. C., 451; *Young v. Young,* 97 N. C., 132; *Irvin v. Clark,* 98 N. C., at page 445; *Aydlell v. Pendleton,* 111 N. C., 28; *Whitesides v. Cooper,* 115 N. C., 570; *Smith v. Smith,* 118 N. C., 735.

If the Courts possessed the power it would doubtless be to the interest of the parties to order the sale here asked for. The act of 1748, ch. 204 (now Code, 1325), converted by one stroke of the legislative pen estates tail into fee simple, and a similar act placing settlements of the kind before us, whether made by deed or will, in the power of the Courts, or else cutting off the remainders beyond the first takers after the life tenant might commend itself to the law-making power, by reason of the public policy to disincumber and unfetter the disposal and transfer of realty. But the Courts had no power to convert estates tail into fee simple, and they have not the power to do what is here asked by the plaintiffs.

Judgment reversed and

Action dismissed.