HODGES v. LIPSCOMB.

(Filed October 20, 1903.)

PARTIES — *Remainders* — *Contingent Remainders* — *Sales* — *Life Estates—Acts 1903, ch. 99—The Code, sec. 1325.*

> In an action for the sale of land for re-investment, in which there are contingent interests, it is sufficient to make parties those who would, by the happening of the contingency, have an estate therein at the time of the commencing of the action; and where the remainder may go to minors or persons not *in esse* or unknown, the court may appoint a guardian *ad litem* to represent such parties.

ACTION by Samuel Hodges and others against James Lipscomb and others, heard by Judge *G. S. Ferguson*, at September Term, 1903, of the Superior Court of WILSON County.

Civil action, brought for the purpose of selling certain lands for reinvestment under the provisions of chapter 99, Laws 1903. The land ordered by the Court to be sold for reinvestment was devised by the testator to his adopted daughter, Minnie, for life, "and at her death to such child or children as she may leave surviving her, and if any of said children shall die, leaving issue, prior to the death of said Minnie, in that event such issue shall represent and take the share of its immediate ancestor." Another piece of land was given to testator's adopted daughter, Bettie, for life, with remainders over in the same terms used above.

The ultimate remainder is in the following words: "If both the said Minnie and the said Bettie shall die, leaving no child or children, nor the issue of any child or children, living at their death or the death of the survivor, then and in that event I direct that my entire estate shall be divided equally between my heirs at law and distributees and the heirs at law and distributees of the said Minnie and Bettie, claiming and entitled through their mother." A full recital of the limitations will be found in the former case, 128 N. C., 57.

The said Minnie and Bettie and their children and grand-children are the plaintiffs in this action. They have made parties defendant all those collateral heirs at law and distributees of the said Minnie and the said Bettie and of the testator who would be their respective heirs at law and distributees if the contingency should happen now, and they have sought to make all other persons who in any contingency would become interested in said land parties to this action through a guardian *ad litem* appointed by the Court for that purpose on motion of plaintiffs.

From a judgment for the plaintiffs the defendants appealed.

*Womack & Hayes* and *Connor & Connor,* for the plaintiffs.

*F. A. & S. A. Woodard,* for the defendants.

CLARK, C. J. (after stating the facts). All the facts alleged in the complaint are admitted in the answer, and that a sale of the land described in the complaint will be beneficial not only to the plaintiffs but to the defendants, the contingent remaindermen, if the interests of the defendants can be protected by the decree, and the purchasers assured of a good title. This will was passed upon by this Court in *Hodges v. Lipscomb,* 128 N. C., 57, and it was held that the Court had no

HODGES *v.* LIPSCOMB.

power to order a sale with the parties then before the Court. In this action additional parties have been made, and summons has been issued against all the parties *in esse* who would be contingent remaindermen if the contingency should occur at the date of the summons. An affidavit was filed containing, among others, the following averments: "That the defendants named in the summons, which has been issued in this action, are the persons to whom said real estate would go at this time if the said Minnie and Bettie should now die without leaving any child or children, or the issue of any child or children, surviving the said Minnie and Bettie." "That it is impossible for affiant to say what other persons may become interested in said lands, for that it is impossible for him to fix the time of the death of the said Minnie and Bettie without any children surviving or the issue of such children, or whether at such time any or all of the defendants may be living or not, or who their respective heirs will be, for which reason this affiant avers that the names and residences of the other persons who may become interested in any contingency in said lands are unknown."

Upon motion of the plaintiffs the Clerk of the Court caused publication to be made of the summons for four weeks in a newspaper published at the county-seat, together with a concise statement of the purposes of the action, and directing the defendants "and all others who in any contingency may become interested in the said lands" to appear at the succeeding term of said Court and "answer, demur or otherwise plead to the complaint; otherwise the relief therein demanded will be granted." The plaintiffs alleged in their complaint that "it is impossible for the plaintiffs to' allege who are the persons who may become interested in the said lands under the terms and conditions of said will, for that it is impossible for them to fix the date of the death' of the said Minnie D. Hodges and the said Bettie E. McDaniel,

without child or children or issue of said child or children. But that the plaintiffs have applied to this Court for the appointment of a guardian *ad litem* and representative for the said unknown persons who may, in any contingency, become interested in the said lands, and who are not otherwise made parties hereto and properly represented herein."

At the appearance term the Court appointed a guardian *ad litem* for such unknown persons as prayed. Answer was duly filed by such guardian *ad litem,* admitting the facts set out in the complaint and submitting to the judgment of the Court. Judgment was rendered appointing a Commissioner to receive bids for a lot of land described in the complaint, and to report these bids to the Court for its further direction as to sale and reinvestment of proceeds.

The plaintiffs insist that this proceeding constitutes a compliance with the provisions of section 2, chapter 99, Laws 1903. The only respect in which it is supposed there is a defect is that there was a failure to secure personal service of summons upon the heirs at law of the brothers of the grandfather of Minnie D. Hodges and Bettie McDaniel, if there are any such now in being.

The history of judicial decision on this subject is exhaustively given by the Court in the case of *Springs v. Scott,* 132 N. C., 548. It is there very conclusively shown that the State of North Carolina is out of harmony with the Courts in other jurisdictions, and it was the evident purpose of the Legislature in the passage of the act of 1903 to bring our law into accord with that prevailing elsewhere. If that act requires more to be done than has been done in this case it will require a practical impossibility and leave our law almost where it was before. The appellants' construction that summons must be served personally on all persons *in esse* who, in any contingency, however remote, might have an interest in the land, would require the formation of a family tree

reaching back into the unknown past, and bringing it down through its various branches to the present time, for it is possible that all the heirs at law of any one propositor in the past might become extinct, thereby carrying the descent over to the most remote collateral relatives. This cannot be the purpose of the law. The statute is a remedial one. A known grievance existed, and it was the purpose of the Legislature to give a remedy where none was provided by law.

The large number of decisions in which Watson v. Watson, 56 N. C., 400, has been cited, twenty-one by name, and a large number of others in which the principle is enunciated, shows the earnest efforts of the profession to secure a change or modification of its rulings and the necessity for removing this fetter upon the alienation of real property.

The policy of law in America has been clearly pronounced to destroy all restraints upon alienation. North Carolina has stood alone in her conservatism, holding on to an unfortunate decision wholly out of harmony with this current of public policy, until the advisability of a change was so imperative that in Hodges v. Lipscomb, 128 N. C., 57, the Court called attention to the necessity of legislation, using this language: "The act of 1784, ch. 204 (now The Code, sec. 1325), converted by one stroke of the legislative pen estates tail into fee-simple, and a similar act placing settlements of the kind before us, whether made by deed or will, in the power of the Courts, or else cutting off the remainders beyond the first takers, after the life tenant, might commend itself to the law-making power by reason of the public policy to disincumber and unfetter the disposal and transfer of realty."

The Legislature adopted the first suggestion, and by the broadest terms in section 1 of the act gave the Courts power over settlements of this kind. A very strict construction of section 2 will absolutely defeat the legislative purpose.

The case as bar is an apt illustration of how this may be

done. Each of the life tenants has a large number of children, one has six and the other seven, several being married, and there now being *in esse* three grandchildren. The possibility that the life tenants will die without children or the issue of children living at their death, or the death of either, is most remote. And yet there have been made parties to this action all of those persons who would be heirs at law of the life tenants and of the testator, if the contingency should happen now, there being forty-five persons embraced in this class, not counting the husbands of the married women, who have also been made parties.

If we now assume that all of these persons will be dead and without issue when the contingency happens, then it will be necessary for us to go back still further to ascertain who are the heirs at law of the great-grandfather, and which of them are now *in esse,* and serve summons personally on each of them. After this has been done, will the statute require us to assume that it is possible that all of this class may be dead when the contingency happens, and without issue, and so require us to ascertain who among the heirs at law of the great-great-grandfather are now *in esse,* after having first made parties the heirs at law of the great-grandmother? Such remote contingencies will not be noticed by the Court. "A bare expectancy is not a vested right." *Bass v. Nav. Co.,* 111 N. C., 439; 19 L. R. A., 247.

It is the desire of the Courts, wherever possible, to carry out the ascertained purpose of the testator. In the case before us the primary beneficiaries of the testator's bounty are his adopted daughters, their children being next in his mind. The children of each become the next objects of his benefaction in the share of their aunt, and he might well have stopped here; but out of abundant caution he inserted a provision providing for the ultimate limitation over, still having his adopted daughters in mind, giving their heirs at law one-half of his

property as ultimate remaindermen. The admitted facts in this case show that the land devised is in the heart of one of our most progressive and growing cities. It must bear city taxes. Already assessments have been levied against it for special benefits by reason of street improvements, curbing and paving. A large portion of it is unimproved, and hence non-income bearing, and as the city grows, instead of becoming more valuable to the objects of the testator's bounty by reason of this ulterior limitation, the charges are increasing and the income decreasing, and no money with which to keep the houses in repair. A strict construction of the statute would continue this state of affairs indefinitely and defeat the testator's intention; and thus public policy and the testator's wishes unite to support the action of the Court below.

Courts of equity were brought into existence to alleviate those hardships which the law by its rigor imposed. These courts have ever exercised the right to take a *rem* into its possession for the purpose of its preservation, when by law this could not be done. When, because of infancy or other lack of capacity, parties could not represent themselves in court, these courts always appoint an officer of the court to look after and protect their interest.

The fundamental error in *Watson v. Watson, supra,* is in this sentence: "The difficulty consists in there being no person in existence for whom the Court can be called upon to act." The Court was not called upon to act in the interest of individuals, but in the interest of the property. It was the protection and preservation of the *rem* that called into existence the equitable power of the Court. It is an easy matter to appoint a representative for those unborn, and who might never be born, that the property might be preserved to await the uncertainties of the future. In this way their interests are fully protected. Chapter 99, Laws 1903, particularly confers the power of control and authorizes the Court to

appoint a representative, not only for persons not in being, but for those whose names and residences are not known. It is the clear purpose of the statute to give the Court full power, and when all of the representatives of the first class of takers under the ulterior limitation are made parties to the proceeding, it would seem hardly necessary to do more. But here more has been done. A representative to represent all possible contingencies has been appointed, and such remote interests have been represented by counsel. That act was passed, as already stated, in consequence of a suggestion of this Court, which was made in view of the difficulties entailed by Watson's case. The provisions of the statute have been carefully complied with. It would not be necessary to recite the facts and law so fully but for the importance of the principle involved and to prevent all doubts about titles resting upon the new statute.

The ground of this decision and its reasoning have been so clearly and ably stated in the excellent brief prepared by Messrs. G. W. Connor and T. B. Womack, counsel for the plaintiffs, that we have done little more than to copy and adopt it as our opinion.

No error.

CONNOR, J., having been of counsel, did not sit on the hearing of this case.