HOKE, J., concurring in result; MANNING, J., did not sit.
The facts are stated in the opinion of the Court.
This action was brought, under sec. 1590 of the Revisal of 1905, for the purpose of selling certain land or lots, situated in the town of Asheville, and reinvesting the proceeds of sale in the improvement of other property belonging to the parties interested. The court below found the following facts, substantially:
1. In 1856, James M. Smith died, seized and possessed of two tracts of land, situated in the town of Asheville and fully described in the pleadings. He left a last will and testament, so as to pass real and personal property, and by it devised certain tracts of land to Elizabeth A. Gudger, to her sole and separate use and benefit, for and during her life, with remainder to such of her children as might survive her and those representing the interest of any that might die leaving children.
2. The plaintiff, Elizabeth Smith, is the life tenant mentioned in said will, and the defendants, Lula R. Miller (wife of C. H. Miller), J. H. Gudger, Mary E. Weaver, Lula R. Stepp, C. H. Miller, Jr., Henry V. Gudger, Joseph P. Gudger, John C. Gudger, Edwin Mc. Gudger, E. H. Miller, L. G. Miller, J. R. Miller and E. R. Miller, are the children and grandchildren of the said Elizabeth A. Smith, and, together with (622) said Elizabeth, are all the persons in esse who have or may have any possible interest in said lands.
3. The tract situated in the angle of Main and College streets had some improvements on it, and yielded an annual income considerably in excess of the taxes and assessments on the whole of the property, while the other tract was unimproved and yielded little or no income. At the commencement of this action, and now, both of said tracts of land were not worth more than $130,000. The first order of sale authorized C. H. Miller to sell tract No. 2 (the unimproved tract). No sale was made under this order. At April Term, 1904, without any reference or finding of facts, an order was made, by consent (minors being interested), authorizing and directing C. H. Miller to sell such parts of tract No. 1 (the improved tract) as he thought best, not to exceed one-half thereof. From time to time, sales of parts of said tract of land were made, reported and confirmed, until, at March Term, 1906, said C. H. Miller, as commissioner, made a report to the court that he had sold parts of said tract of land, amounting to $24,205, and that, after paying all taxes, street assessments and costs, he had $2,729.08 left; "that, preparatory to investment of said sum, together with such other amounts as may be necessary to be realized from future sales, the commissioner has had torn away from the corner of North Main and College streets what has been known as the Old Buck Hotel building, and has had plans drawn, and devised ways and means looking to the erection on said site of a modern hotel and business block, which, according to the estimates of the supervising architect, will, when completed, cost nearly $150,000." This report *Page 599 
asked for an order to sell all of tract No. 2 (unimproved) and to apply the proceeds to the erection of a building at the corner of North Main and College streets, as hereinbefore indicated. This report was dated 31 March, 1906. Thereupon, the matter was referred to J. B. Cain, to report at his earliest convenience as to the advisability of reinvesting the proceeds in the manner indicated by said commissioner. At March Term, said Cain, as referee, made a report that, in his opinion, the interest of all parties would be enhanced by the reinvestment asked for. The report of said Cain, as referee, did not contain the finding of a single fact from which the court could determine the value or worthiness of Cain's opinion. At March Term, 1906, an order was made, granting leave to said Miller to reinvest the proceeds of sales heretofore had and hereafter to be made in improvements of the kind and character designated in said Miller's petition, to wit, in the erection of a hotel, etc., on the lot at the corner of North Main and College streets, such (623) investment to be made under the supervision and direction of said commissioner, who will give the matter his first and best attention and make a report of his proceedings as he may from time to time be required by this court. At the time this order was made, no itemized estimate as to the cost of the improvements had been exhibited to the court and filed.
4. The said C. H. Miller then made contracts for the erection or construction of the said building, including structural concrete work, concrete piers, steam heating, plumbing, stone work, electrical and telephone wiring and fixtures, cornering columns, plate and other glass, screens for windows and doors, painting, additional concrete walls, concrete flooring, elevators, partitions, upholstering, doors, inside trimming, etc., amounting in the aggregate to $193,350.53. The said Miller employed one R. S. Smith, a competent architect, to make plans for said building and to superintend the work on the hotel. There was no effort made to construct on said land any "business block." Shortly after the making of the above-mentioned contracts (which did not provide for the building of the outer walls, except in so far as the concrete pillars or upright beams would constitute a part of said walls), said R. S. Smith and C. H. Miller concluded to add to the cost of said structure, and placed the lowest estimate of the cost at $225,000. C. H. Miller made no contract with any one looking to or with the view of building a hotel on said corner lot at a cost of less than $193,250, and this did not include the building of the outer walls. The value of the corner lot in the angle of North Main and College streets, on which a skeleton of a concrete hotel had been built, without the skeleton concrete structure, is, and was when the concrete structure was commenced, worth $25,000. That, of the proceeds of the sales of land made by orders of this court, the sum *Page 600 
of $30,295.28 has been expended in the erection of the said concrete skeleton of a hotel — $24,313.10 by C. H. Miller, including his accounts against Faragher Company and Edwin McKay Company, and $5,982.18 by W. R. Whitson, commissioner. The said structure is a plain, rectangular building, with a hollow running about two-thirds of its length. This fact was found by a careful inspection of the structure by the judge himself. In order to complete the hotel according to the plans of the architect and the contracts signed by C. H. Miller, it will take at least $100,000, in addition to what has been spent. It is not to the interest of the James M. Smith devisees to sell any more of said lands and reinvest the proceeds in completing said hotel. If the proceeds (624) of the sales of the balance of said lands were sufficient to complete the hotel, it would leave nothing with which to furnish the said hotel. No hotel man would lease the building and furnish it upon a term of less than twenty years, and such a lease could not be made. The location is well suited to attract commercial travelers, but very badly situated to attract summer and winter visitors, the city of Asheville being a health resort. On 20 October, 1906, C. H. Miller resigned as commissioner, and W. R. Whitson was appointed in his place.
5. The court further found that the first order of sale, made 1 December, 1903, described only tract No. 2, and that at April Term, 1904, this order was modified so as to authorize C. H. Miller, commissioner, to sell such part of the lot as he might select, not exceeding one-half thereof. The court rejected the proposal of those claiming liens against the land to complete the hotel by the sale of the balance of the James Smith lands, and found that it would not be to the interest of the devisees of James Smith to do so, and that the hotel, when completed in that way and without furniture, would not yield any income.
6. Numerous exceptions were filed to the report of the referee, and were heard by his Honor, Judge R. B. Peebles, at chambers, by consent of the parties; and in considering and passing upon the exceptions, his Honor found the foregoing facts, and upon them he adjudged that the court had no general jurisdiction, in law or equity, to sell the lands of J. M. Smith, and that it could act only by virtue of the statute (Revisal of 1905, sec. 1590), and that this statute conferred a special and limited power to sell the land and reinvest the net proceeds of sale, after deducting the costs and expenses; that the statute did not confer upon the judge or the court the power to borrow money or create a debt or charge upon the land.
The judge further held, as matter of law, that the decree authorizing C. H. Miller, the commissioner, to contract for the building of a hotel, at a cost of $193,503, or even at $150,000, when the court had less than $50,000 in cash and less than $40,000 worth of land which had been *Page 601 
ordered to be sold, but which had not been sold, was void upon its face; that all persons who dealt with C. H. Miller, as commissioner, were bound to examine the record to ascertain that the court had jurisdiction of the person and the thing or subject-matter of the action, and that an inspection of the record would have shown that the order authorizing C. H. Miller to build the hotel was void for want of power. No one of the parties to this action has any statutory lien on the hotel structure or the land on which it is situated, and no one of the (625) parties who furnished materials for or performed work on said structure has any personal claim against C. H. Miller, for the reason that it was not contemplated that he should be held personally liable. No one of the parties who endorsed C. H. Miller's note, or notes, to enable him to procure money from a bank, has any claim whatever on said hotel lot. That Gay Green has no right, title or interest in or to the purchase-money notes deposited with him by C. H. Miller, and that W. R. Whitson, as commissioner, is hereby ordered to collect the same and hold the proceeds, to be hereafter invested, by order of court, in real estate, subject to the same uses, trusts and limitations as those mentioned in the will of James Smith. That none of the parties who have intervened in this action has any statutory lien on the hotel or the land on which it is situated.
The court further held that certain of the parties who claim liens upon the lands, while they did not have any statutory liens, were yet entitled to an equitable lien upon the lot on which the hotel was erected, to the extent of the enhanced value of said lot by the labor done and materials furnished for the construction of the hotel building, subject, however, to a prior lien in favor of the devisees of James M. Smith, to the extent of the value of said lot and the proceeds of the sales of other lands put into the hotel structure. The court made other rulings concerning the rights and liens of the several claimants as between each other, with references to the priority of the liens and validity of the claims.
The court thereupon ordered that W. R. Whitson, as commissioner, sell the lot on which said concrete structure or hotel building is situated, in the angle of North Main and College streets, with the improvements thereon, to the highest bidder upon the premises, and gave special directions as to the notice of sale and the collection of the purchase-money, and directed the commissioner to report to the next term of the Superior Court. The court further directed that, out of the proceeds of sale, the commissioner should pay the costs of the sale and retain the sum of $25,000, the value of the lot, and $30,295.28, the proceeds of the sale of lands invested in said structure, with interest from 15 March, 1907, and the balance, if any, the commissioner was directed to pay the claimants, *Page 602 
or lienors, according to their rights and priorities therein, as set forth in the decree. It was further directed that the sums of $25,000 and $30,295.28, with interest, and the amounts realized from the sales of lands in the hands of the commissioner, or which may hereafter (626) come into his hands, together with what he may collect on the judgment of C. H. Miller or his surety, should be held by the said commissioner, W. R. Whitson, to be reinvested according to the provisions of the statute, and under the direction of the court, after deducting therefrom the costs and expenses of the sale of such lands as had theretofore been sold, with further directions to the commissioner that he make proper inquiry and report to the court what property should be purchased for the investment of said proceeds of sale and other funds in his hands, and requiring him to find the facts and state the evidence upon which they are based, in order that the judge presiding in the Superior Court and passing upon his report could give the directions as to the legal rights of the parties, upon the facts thus reported. The court, in its judgment, also directed how the costs and expenses of this proceeding should be paid, and retained the cause for further directions.
To the judgment of the court nearly all of the parties excepted and appealed to this Court, and the cause is now before us for the purpose of passing upon the correctness and validity of the judgment which Judge Peebles rendered in the court below. Before doing so, we must commend his Honor for the able, careful and painstaking manner in which he has considered the case in its various aspects and prepared the judgment, to which we have just referred. In several respects the case is a very complicated and difficult one, if we would undertake to pass upon the questions raised by the several claimants, who assert that they have liens upon the lot in the said angle at the corner of North Main and College streets, in the city of Asheville, but we do not consider it necessary to pass upon these questions until the lot and the structure thereon have been sold and the amount realized from the said sales can be definitely ascertained. It is true that his Honor finds that the value of the lot, by itself, is $25,000, and that something more than $30,000 has been invested in the uncompleted hotel building, but it may be that the actual sale of the property will show that a sufficient amount of money cannot be realized thereby to pay more than the sum which the court in its judgment finds as a matter of law belongs to the devisees of James Smith, to whom the lot belonged, and whose property had been sold and invested in the construction of the hotel building.
In this case the court would have had no power to order a sale of the property of James Smith but for the act of 1903, ch. 99, amended by the act of 1905, ch. 548 (Revisal, sec. 1590). We have (627) construed the statute and the section of the Revisal, to which *Page 603 
we have referred, as authorizing the court to sell property limited upon a contingency, as provided by the statute, and to invest the proceeds of sale, either in purchasing or in improving real estate, so that the parties who own the property originally devised may make the same profitable by sale or receive an income therefrom. In other words, we held the said statute to be valid, as being a rightful exercise by the Legislature of its authority under the Constitution. Anderson v. Wilkins, 142 N.C. 154;McAfee v. Green, 143 N.C. 411; Hodges v. Lipscomb, 133 N.C. 199; Smithv. Gudger, ib., 627. But the statutes to which we have referred authorize the sale of property limited upon a contingency, and provides for properly safeguarding the interests of those who are not in esse, whether the estate so limited is to an uncertain person or upon an uncertain event. We quote the language of the statute: "The court shall, if the interests of all parties require or would be materially enhanced by it, order a sale of such property, or any part thereof, for reinvestment, either in purchasing or improving real estate, less the expense allowed by the court for the proceeding and sale; and such newly acquired or improved real estate shall be held upon the same contingencies and in like manner as was the property ordered to be sold. The court may authorize the loaning of such money, subject to its approval, until such time as it can be reinvested in real estate, such time not to exceed two years." Revisal, sec. 1590.
It will be observed that section 1590 of the Revisal, which we have just quoted, authorizes the court to order a sale of such property, or any part thereof, for reinvestment, either in purchasing or in improving real estate. It is evident that the intention of the Legislature was that there should be no reinvestment until the amount realized from the sale of the property had been ascertained, so that the court might restrict the investment within the limit of the amount of such proceeds of sale. It was not intended that the court should have the power to order a reinvestment of the proceeds of the sale of any property, for the purpose of a conversion, until it was known what was in hand to be so invested, for the simple reason that, if the investment so ordered before the sale of the property and before it could be ascertained what amount the court would have to invest in other property, the amount of the investment might far exceed the proceeds of the sale and involve the estate heavily in debt. The statute clearly points out the procedure by which a conversion of the property is to be accomplished, and it plainly appears, so that "he who runs may read," that the court must first know what amount it has to invest, before the investment is made (628) in order to avoid involving the estate in debt. We are therefore of the opinion, upon a careful perusal of the statute (Revisal, sec. 1590), that the court had the right and the power to order a sale of *Page 604 
the property, which was in fact afterwards sold, for the purpose of reinvestment, so that owners of the property, however their title may have been derived, might realize an income, which otherwise they would not do. This validates the title of the purchasers of the property which was sold, and brings us to the consideration of the other question in the case, namely, whether the court in this case had the power to anticipate what would be the proceeds of sale, and to reinvest the same in the improvement of the property which was situated at the angle of North Main and College streets. This case is a striking illustration and example of the unwisdom and impolicy of any such proceeding. It was surely not intended by the Legislature that an estate might be burdened by debt for the purpose of selling and reinvesting the proceeds, because such a course would manifestly defeat the object of the law, and the owners of the property might find their condition worse than it was before the sale was made. It was, therefore, not within the power of the court below to order a reinvestment of the proceeds of any sale of the property or to encumber the estate of James Smith with an indebtedness, for the purpose of improving the property above described, until the other property had been sold and the net proceeds of sale had been ascertained. How the statute can bear any other construction we do not well see.
We therefore hold that his Honor, Judge Peebles, was correct in his ruling that while the purchasers at the sale of the property, which was ordered to be converted into cash, for the purpose of improving the other property, acquired a valid title, or whatever title James Smith had therein, the court had no power to reinvest beyond the amount realized from the sale, and when it attempted to do so it was acting without its jurisdiction and without any authority given by the statute, which is the only one upon which the several claimants in this case rely. In this case the proceeds of sale are far less than the amount necessary to complete the building, and it will be necessary to sell other property in order to do so, and it is at least problematical whether the additional property, if sold, would bring enough to carry out or execute the present scheme of improvement. We therefore concur with his Honor in his said ruling, to the extent above set forth, and direct a sale of the (629) property by the commissioner, W. R. Whitson, and a report to the court, as provided in the judgment.
The other questions as to the liens and priorities of the claimants, we need not now decide, because it may turn out, as we have already said, that the property in the angle may not bring more than the amount which his Honor, Judge Peebles, by the judgment he entered, required to be paid to the devisees; and if it does not bring more than enough for that purpose, the questions which were argued before us at very great length and with unusual ability and learning will never be *Page 605 
presented to us for our consideration and decision. We held, in the case ofGray v. James, 147 N.C. at p. 139, that where, in a decision of the court below, or of this Court, the question presented in the argument or briefs of counsel or in the record, may never arise for adjudication, this Court will consider them as moot questions and will not undertake to pass upon them until it is ascertained by a sale of the property that they had become practical questions in the case. It follows, therefore, that we cannot pass upon these questions but must merely affirm the decision of Judge Peebles, based upon his and our construction of the statute, and remand the case, with instructions to proceed in the sale of the property and in other respects as directed in the judgment, leaving the other questions open for consideration and decision hereafter, if it becomes necessary to pass upon them.
If the property is sold and the amount in excess of that which is to be paid to the devisees of James Smith is realized from the sale, the claimants or alleged lienors can present the questions before us which they have argued, and we will then consider what are their respective rights in the surplus, and proceed in other respects to decide what may be then before us for our consideration.
Modified and affirmed.
HOKE, J., concurring in result. MANNING, J., did not sit.
Cited: S. c. 152 N.C. 314; S. c. 155 N.C. 243; S. c., ibid., 248; S.c., 158 N.C. 100; Bullock v. Oil Co., 165 N.C. 68.