## JOHN G. DAWSON, COMR., v. D. E. WOOD.

### (Filed 5 March, 1919.)

**1. Estates—Remainder—Contingent Interests—Sales—Statutes.**

While the courts of this State do not have inherent power to decree a sale and pass title to the purchaser of lands, with remainder limited upon a contingency that would prevent the ascertainment of the ultimate takers, or any of them, till the death of the life tenant, this power is now conferred by the express terms of our statute in all cases where there was "a vested interest in real estate, with a contingent interest over to persons not in being, or when the contingency has not happened which shall determine whom the remaindermen are," under the procedure therein laid down. Public Laws 1903, ch. 99; Pell's Revisal, sec. 1590.

**2. Same—Actions—Parties Plaintiff.**

Proceedings to have lands sold that are subject to a life estate, with limitation over, upon contingencies which will prevent the ascertainment of the remaindermen during the life of the first taker, etc., may be instituted by any person having a present vested interest in the lands. Pell's Revisal, sec. 1590.

**3. Estates — Remainder — Contingent Interests— Sales— Statutes— Investments—Reinvestments.**

The provision of chapter 548, Laws 1905, requiring that the proceeds of the sale of land, under the statute, where the remaindermen of contingent interests cannot be ascertained in the lifetime of the first taker, shall be reinvested in realty within two years, was removed by chapters 956 and 980, Laws 1907, leaving the matter of reinvestment somewhat in the discretion of the court, with the clear intimation that the reinvestment in realty should be made when an advantageous opportunity should be offered.

**4. Estates — Remainder — Contingent Interests—Actions—Parties Defendant—Statutes.**

In proceedings under the statute (Pell's Revisal, sec. 1590) to sell lands held in remainder, upon contingencies rendering the remaindermen incapable of present ascertainment, etc., the necessary parties defendant are those of the remaindermen who, on the happening of the contingency, would have an estate in the property at the time of action commenced, and those remotely interested to be represented and protected by a guardian *ad litem,* as the statute provides.

**5. Constitutional Law—Statutes—Estates—Remainders—Contingent Interests—Sales.**

Pell's Revisal, sec. 1590, providing for the sale of land affected with certain contingent interests does not in its terms or purpose profess or undertake to destroy the interests of the contingent remaindermen in the property, but only contemplates and provides for a change of investment, subject to the use of a reasonable portion of the amount for the improvement of the remainder, properly safeguarded, with reasonable provision for protecting the interest of the unascertained or more remote remainderman by guardian *ad litem,* etc., and is constitutional and valid.

DAWSON v. WOOD.

6. **Estates— Remainder— Contingent Interests— Statutes—Purchaser—Contracts—Deeds and Conveyances.**

Where the commissioner appointed by the court has sold lands affected with contingent interests in remainder of such character that those to whom such interests will ultimately vest are not presently ascertainable, and the provisions of Revisal, sec. 1590, have been carefully pursued, the interest of the contingent remaindermen properly safeguarded, and an advantageous sale has been made, the deed of the commissioner to the purchaser conveys a valid title, and he may be compelled to comply with his contract of purchase.

7. **Estates — Remainder—Contingent Interests—Statutes—Independent Actions.**

As to whether the purchaser of lands affected by remote and presently unascertainable contingent interests in remainder, sold under proceedings in all respects conforming to the provisions of Pell's Revisal, sec. 1590, can, in an independent action by the commissioner therein appointed to enforce the contract of sale, object to the validity of the sale, *Quære?*

8. **Judgments—Estoppel—Estates—Contingent Interests—Statutes.**

A judgment in an action rendered adverse to the petitioner to sell lands, claiming title, where the inquiry only related to the petitioner's title and right to sell, and involves the question as to whether the facts and conditions as alleged and then existent rendered the sale expedient and for the best interest of remote and unascertainable contingent interests in remainder, is not an estoppel in a subsequent action under changed conditions and brought under the provisions of Pell's Revisal, sec. 1590, authorizing such sale when its provisions are complied with.

9. **Estates—Remainder—Contingent Interests—Sales—Life Tenants.**

Pell's Revisal, sec. 1590, by providing that a sale of lands affected by certain remote contingent interests may be made when the interest of all parties would be practically enhanced, does not require that the interest of the life tenant therein should be made to suffer for the benefit of the contingent remainderman alone, when the income is absorbed by current costs and charges, for the rights and interests of all parties in interest should be considered and determined with a sense of proportion and in reasonable adjustment of the rights of all.

10. **Appeal and Error—Objections and Exceptions—Estates—Contingent Interests—Purchaser.**

In proceedings under Pell's Revisal, sec. 1590, to sell lands affected with presently unascertainable contingent interests in remainder, it is not open to objection by the purchaser at the sale, regularly had and in conformance with the statute, that the decree of the court was inequitable to the life tenant as to the proportion of interest on the proceeds of the sale, as such objection is open only to the party affected, and is not essential to the purchaser's title.

CONTROVERSY without action, from LENOIR, submitted on case agreed, and decided by *Allen, J.,* resident judge of the Sixth District, on 8 February, 1919.

Plaintiff, under a decree of the court, in a cause, duly constituted, of

Laura A. Miller *et al.* v. Julia B. Faulkner *et al.,* and as commissioner· in the cause, having contracted to sell the land, the subject-matter of said suit, to defendant, D. E. Wood, at the price of $33,000, and the payment of certain assessments for paving, etc., which said sale was fully approved, etc., the said purchaser, on demand made, declines to take the property or comply with the terms of the bargain, claiming that the commissioner is not in a position to make a valid title.

On the case presented, the court, being of opinion that the title offered was a good one, entered judgment for recovery of purchase price and the delivery of the deed on payment of same or compliance with the terms. of the decree. From this judgment the defendant appealed.

*Dawson, Manning & Wallace for plaintiff.*
*Rouse & Rouse for defendant.*

HOKE, J. From the facts, properly presented, it appears that the real estate in question belonged to one Richard F. Green, who has died, making disposition of the same by his last will and testament, as follows:

"Item IV. I give and bequeath to my wife, Eliza B. Green, my house and lot in the town of Kinston, N. C., in which I now reside, to go with all my household and kitchen furniture and all other improvements thereto belonging, to have and to hold during her natural life, and at her death to go to my daughter, Laura A. Green, to have and to hold during her natural life, and at her death to her nearest blood relative."

2. That the wife, Eliza B. Green, is dead, and Laura A. Miller, having married, is the Laura A. Green referred to in the aforesaid devise, and that Julia B. Faulkner and Laura A. Harding were, at the time of the proceedings instituted under which the present sale was had, and are now, the nearest of kin of said Laura A. Miller, and the former has six children now living, one of whom is a minor, and the latter also has now living children and grandchildren, resident and nonresident, and most of whom are minors.

3. That the present life tenant, Laura A. Miller, in May, 1918, instituted an action to sell said property for reinvestment, under section 1590 of the Revisal, making the present nearest blood relatives, Julia B. Faulkner and Laura A. Harding, parties defendant, and in same proceedings it was made to appear, by averment and otherwise, that this was a desirable, valuable lot in the business section of Kinston, N. C., subject to the taxes and assessments usually imposed on such property;. "that the lot yields very little income and is burdensome; that the buildings situated upon it are very old, have become in a bad and dilapidated condition, which are yearly growing worse, to the end that the said structures will soon be valueless, and are in fact at this time in a damaging

DAWSON *v.* WOOD.

condition, and the income yielded by the said property does not exceed $200 per year; that on account of the condition of the title to the said lot of land, as above set forth, no one feels justified in improving the structures situated upon said land, which consists only of a dwelling-house and a small out-house, nor do they feel justified in placing new buildings upon the said lot of land, to the end that the revenue from the said lot may be increased, for the reason that if any one should make expenditures in the improvement of the said lot, it might, by reason of the condition of the said title, result in a loss to them of any amount which they might expend"; and praying for a sale of same for reinvestment, provided as much as $30,000 could be obtained therefor, with a cash payment thereon of $5,000.

The next of kin, having accepted service, did not answer the averments of the petition showing the necessity of sale, and made no resistance to the application. It was thereupon adjudged that J. G. Dawson, as commissioner in the cause, make inquiry as to the value and obtain and submit bids for the property considered adequate and desirable. And it was furthermore adjudged, after due inquiry, that Y. T. Ormond be and he was appointed guardian *ad litem* in said action "to represent in same, as contemplated by law, any persons under disabilities and any person not now in being or whose names and residences are not known, or who may in any contingency become interested in said land"; and, summons having been duly issued, said guardian voluntarily appeared in the cause, waiving service, etc., and accepting appointment as such guardian; that at the January Term, 1919, of Superior Court of Lenoir County, the said commissioner made his report, submitting that, after full advertisement and due inquiry, the present defendant, D. E. Wood, had bid for the property $33,000, of which $15,000 was to be paid in cash and the remainder with bond, payable on or before 10 years, with interest, and properly secured. The bid and security offered was set forth in the report, and the said bidder also agreed to pay eight-tenths of the amounts now due for paving assessments against the property, aggregating $750.65. The commissioner further reported that the price offered was the reasonable worth of the land; that it was the best price possible to obtain for it, and that the interest of all the parties would be materially enhanced by a sale at the amount stated, and recommended that the sale be made on the terms proposed. And the guardian *ad litem,* appointed after due inquiry, answered under oath and admitted that the price offered was fair and reasonable worth of the property; "that the interest of all the parties on said proceedings required that the land should be sold, and same would be greatly enhanced in value by the sale to D. E. Wood at the price and on the terms stipulated."

It was further made to appear that heretofore, in 1913, this present

11—177

plaintiff had instituted an action against the defendants, Julia B. Faulkner and Laura A. Harding, then and now the nearest of kin, seeking a sale of this property on allegation that she was absolute owner in fee under the terms of her father's will, and, if otherwise, asking for a sale for reinvestment under the statute. In that case, entitled *Miller v. Harding*, reported in 167 N. C., 53, there was judgment holding that plaintiff had only a life estate in the property and that the right to a present sale had not been shown.

In this jurisdiction, and on the facts thus presented, the courts have not had the inherent power to decree a sale of property and pass a valid title to the purchaser, the remainder here being limited on a contingency that would prevent the ascertainment of the ultimate takers, or any of them, till the death of the life tenant. *Hodges v. Lipscombe,* 128 N. C., 57; *Aydlette v. Pendleton,* 111 N. C., 28; *Williams v. Hassel,* 74 N. C., 434; *Watson v. Watson,* 56 N. C., 401. In other States, and generally, the power in question has been more broadly exercised. See *Bolfil v. Fisher,* 3 Rich. Eq., 1; *Baylor's Leassee v. De Jarnett,* 54 Va., 152; *Ruggles v. Tyson,* 104 Wis., 500, and like cases. And, to remove the restrictions prevailing under our decisions, and with a view of unfettering these estates, to the end that the property might be more profitably employed, the General Assembly of 1903 (chapter 99, Pell's Revisal, sec. 1590) passed a statute conferring on the courts the power to order a sale and transfer of the title in all cases where there was "a vested interest in real estate with a contingent remainder over to persons not in being, or when the contingency has not yet happened which shall determine who the remaindermen are." That the proceedings could be instituted by any person having a vested interest in the land, and all persons *in esse* who are interested shall be made parties defendant and served with a summons, and "where the remainder will or may go to minors or persons under disabilities or to persons not in being and whose names and residences are not known, and who may in any contingency become interested in said land, but because of such contingency cannot be ascertained, the judge of the Superior Court shall, after due inquiry of persons who are in no way interested in or connected with the proceedings, appoint some discreet person as guardian *ad litem* to represent such remaindermen, upon whom summons shall be served as provided by law for other guardians *ad litem,* and it shall be the duty of such guardians to defend such actions, and, when counsel is needed, to make this known to the judge, who shall by order give instructions as to the employment of counsel and the payment of his fees, and the court shall, if the interest of all parties require or would be materially enhanced by it, order a sale of such property, or any part thereof, for reinvestment, either in purchasing or improving the real estate, less expense, etc., and

such newly acquired or improved real estate shall be held upon the same contingencies and in like manner as the property ordered to be sold, and the court may authorize the loaning of such money, subject to its approval, until such time when it can be invested in real estate."

In Laws of 1905, ch. 548, this reinvestment in realty was required to be within two years, but such requirement was removed by the later Acts of 1907, chs. 956 and 980, leaving the matter of reinvestment somewhat in the discretion of the court, but with clear intimation that the fund should be reinvested in realty when an advantageous opportunity should be offered.

Construing the statute as amended in the carefully considered case of *Hodges v. Lipscombe,* 133 N. C., 199, the Court held that it was only necessary to make parties defendant those of the contingent remaindermen who, on the happening of the contingency, would presently have an estate in the property at the time of action commenced, and as to others more remotely interested they could properly have their interest represented and protected by a guardian *ad litem* as the statute provides. It will be noted that the statute does not, either in its terms or purpose, profess or undertake to destroy the interest of the contingent remaindermen in the property, but only contemplates and provides for a change of investment and subject to the right to use a reasonable portion of the amount for the improvement of remainder, a case presented in *Smith v. Miller,* 151 N. C., 620, and approved, when properly safeguarded, it impresses upon the fund the same contingencies and limitations as were imposed upon the original property. This being true and a reasonable provision being made for protecting the interest of the unascertained or remote remaindermen by a guardian *ad litem,* carefully selected and duly notified, the statute is undoubtedly a constitutional enactment and has been approved in this and other respects by numbers of decisions dealing directly with the subject. *Pendleton v. Williams,* 175 N. C., 248; *Smith v. Witter,* 174 N. C., 616; *Smith v. Miller,* 151 N. C., 620; *Hodges v. Lipscombe,* 133 N. C., 199; *Springs v. Scott,* 132 N. C., 548.

In *Springs v. Scott* and *Smith v. Miller, supra,* the constitutionality of the statute was directly and fully considered, and in *Pendleton v. Williams,* speaking to this and other features of the act, the Court said: "It is very generally recognized that statutes of this kind, being no interference with the essential rights of ownership, but operating rather in addition to those already possessed by the owners of such estates, are well within the legislative powers (citing Lawson's Rights and Remedies, sec. 3867), and the act we are presently considering has been repeatedly approved and applied by decisions of this Court, the law being construed to authorize a sale of the property or the portion of it affected by the contingent interest, and not a sale of the contingent interest separately,

citing *Smith v. Witter,* 174 N. C., 616; *Anderson v. Wilkins,* 142 N. C., 154; *Springs v. Scott, supra,* and other cases.

Under these authoritative interpretations, and on perusal of the record in which this decree of sale was had, it will appear that the petitioner's case comes clearly within the statutory provisions, the methods required have been carefully pursued, the interest of the contingent remaindermen properly safeguarded, an advantageous sale has been affected, and we must concur in the view of his Honor below that the present plaintiff, as commissioner, is in a position to offer a good title, and the contract of the purchaser must be complied with.

This being virtually an independent action by the commissioner to collect the purchase money, there is doubt if any of the objections urged against the validity of the sale are available to defendant while the decree in the principal suit remains unchallenged, either by appeal or motion in the cause.

There seems to be nothing jurisdictional in these objections; but if the contrary be conceded, we are of opinion that none of them can be sustained.

It was chiefly urged that the petitioner in the principal proceedings is barred of his right to a sale for reinvestment, by reason of a judgment denying such right in a former suit instituted by her for the same purpose in 1913 and reported in 167 N. C., 53.

It is undoubtedly the accepted principle here and elsewhere that an adversary judgment will usually conclude the parties as to all matters involved in the issue as stated and defined in the pleadings. *Holloway v. Dunham,* 176 N. C., 550-552, and authorities cited. But an examination of the former case will show that the matters there in issue were: (1) whether the petitioner was the owner, as she claimed, of an absolute fee simple in the property, and (2) whether, under the facts and conditions as alleged and then existent, a present sale was expedient and for the best interest of all the parties concerned. A comparison of the two cases will disclose that, while the quantity of the petitioner's estate, being a question fixed in its nature, was there finally determined against her, on the second, a variable question, as to the expediency of the sale, there are such pronounced differences in the conditions presented that the judgment in the first case could in no sense be considered an estoppel of record in the second. In the former, the proposition was to have a sale at public auction without further inquiry and a suggested value of $15,000 to $18,000, with the persons required to be made parties by the statute in active resistance to the measure, while in the instant case, on careful inquiry, an adequate and responsible bid of $33,000 is presented for consideration, together with relief from $700 to $800 of accumulated assessments and with the proposed measure fully acquiesced in by all

persons who are proper parties under the statute and recommended by reliable officials of the court, who had the matter in special charge. On the case as now presented, and the question of expediency, we must hold, as stated, that the former judgment denying a sale is no bar to such a decree in the present suit. It is further insisted that the decree should not be upheld, for the reason that no proper inquiry has been shown as to the necessity and expediency of the present sale. As we have hereto-fore stated, we incline to the opinion that such an objection is not avail-able in a suit for the purchase money; but in any event it is not open to defendant, on the facts of this record, and we are clearly of opinion that full and adequate inquiry has been shown, it appearing that, before decree made, a conscientious, capable and diligent commissioner, both by public advertisement and personal effort, has made painstaking inquiry into the facts and has succeeded in presenting to the court a bid of $33,000, $15,000 of which is in cash and the remainder sufficiently secured; that the desirability of the sale at such a price is admitted by the parties of record, including a disinterested and intelligent guardian *ad litem,* appointed and acting in the interest of the contingent remain-dermen. As a matter of fact, with property of this value, inadequately improved, in a progressive business town, with ever-increasing taxes and assessments against it, and yielding a return of only $200, the desira-bility of a sale for reinvestment would seem to be revealed by the objec-tive facts. In providing that a sale could be made when the interest of all parties would be materially enhanced, the statute does not require that a life tenant should acquiesce and suffer under such conditions, where the entire income is absorbed by current costs and charges, and for the benefit of the contingent remaindermen alone; but the question should be considered and determined with some sense of proportion and in fair and reasonable adjustment of the rights of *all* parties interested.

Again, it is objected that the decree in the principal case provides that the interest on the fund shall be paid, one-half to the life tenant and one-fourth each to the contingent remaindermen made parties under the statute. This might be a good ground of exception if it were made by the life tenant, but if she has seen proper to consent to such a disposition of the income, this assuredly is no concern of the purchaser, nor could it in any way affect the question of the title that is offered him. In the recent case of *Pendleton v. Williams, supra,* which is an authority appo-site to several of the questions presented in this appeal, the Court, in response to a similar objection, said: "So far as the purchaser is con-cerned, the statute having given the power of sale, and all the parties in interest being before the court, there is no reason why a good title cannot be conveyed to him, and he is no way charged with the duty of seeing that the purchase money is properly distributed. When a purchaser has

paid his bid into court or to its officers duly authorized to receive it, he is quit of all further obligation concerning it, and, as to him, the judgment must be affirmed," citing *Wilkerson v. Brinn,* 124 N. C., 723, and 16 R. C. L., title Judicial Sales, sec. 83.

On the record, we are of opinion that the judgment directing the collection of the purchase money, according to the terms of sale, should be affirmed, and, on final judgment, proper provision be made for securing the fund according to the provisions of law and the course and practice of the court.

Affirmed.