The following are the facts found by the Judge: The plaintiffs contracted to sell to the defendant a lot in Wilson for $1,000, and tendered a deed for it, but the defendant refused to pay the purchase money, alleging that the title is defective. The lot is a part of a larger parcel of land in the same town which was devised to the feme plaintiff (formerly Lucy Whitehead) by her father, H. G. Whitehead. He had four other children, Robert B., H. G., William B., and James S. Whitehead, all of whom survived him. Before 31 August, 1896, the feme plaintiff had intermarried with her co-plaintiff and on said date they had living one *Page 140 
child, Mary Gray Anderson, who is still living. Prior to said date H. G. Whitehead, Jr., had intermarried with Nolia G. Whitehead and on that date they had living one child, Dorothy Whitehead, and since (155) said date there has been born of said marriage another child, Nolia G. Whitehead, both of said children being still alive. At the said time, neither Robert B. Whitehead, William B. Whitehead, nor James S. Whitehead was married, and William B. and James S. Whitehead were minors, F. W. Barnes being their regularly appointed guardian.
On 31 August, 1906, the plaintiffs in this case and their daughter, Mary Gray Anderson, and H. G. Whitehead, Jr., and his wife, Nolia G. Whitehead (the infant being represented by a next friend duly appointed by the Court), instituted a special proceeding before the Clerk against Robert, W. B., and James S. Whitehead, for a sale of the land, the minors being represented by their guardian. This proceeding was regular in form, and the Court decreed that a sale be made of the land devised to the feme
plaintiff, Lucy W. Anderson, by her father, discharged of the limitations imposed by the will; and this judgment was afterwards regularly approved by the Judge of the Superior Court. At all stages of this proceeding the respective parties were represented by counsel. All persons in being who would have taken under the will, if the contingency hereinafter mentioned had then happened, were duly made parties to that proceeding. Since the coming of age of all the children of H. G. Whitehead, Sr., they have executed, pursuant to the said judgment, a mutual deed of exchange and release, each thereby releasing any and all present or future interest which he or she had in and to the property of the other.
The defendant admits that H. G. Whitehead, Sr., at the time of his death, which occurred prior to 31 August, 1896, had a good and indefeasible title to said lot, and that by the deed which the plaintiffs have tendered he will acquire a good title, unless the same is rendered defective or unsound by the following clause in the will of the said Whitehead, which extends to and qualifies all the devises made to his (156) children by that instrument: "Item 24. It is my further will that if either of my children herein named should die, leaving no child living at his or her death, then and in that case I will that the land devised herein to such child so dying shall descend to his or her surviving brothers and sisters, and to the issue of such as may be dead, such issue representing their parents."
The case was submitted to the Court below upon an agreement that the Judge should find the facts and enter judgment thereon according *Page 141 
to his opinion of the law. The Court concluded that, under section 1591 of The Revisal, and the judgment of the Clerk as approved by the Judge, the plaintiffs can convey a good and perfect title; and having entered judgment accordingly against the defendant, he appealed.
after stating the case: We need only consider the question raised as to the validity of the Act of 1905, ch. 93 (Rev., sec. 1591), by which all parties not in esse who may take property, in expectancy or upon a contingency, under limitations in deeds or wills, are bound by any proceedings theretofore had for the sale thereof, in which all persons in being who would have taken such property, if the contingency had then happened, have been properly made parties, it being expressly provided that the act shall not affect any vested right or estate. It is not questioned that the proceeding under examination was regularly conducted in all its stages or that the title which the defendant will acquire under the deed tendered by the plaintiff will be undoubtedly a good and perfect one, if that act is a valid exercise of legislative power.
The rule applicable to cases of this description is substantially the following: If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior (157) statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law. Cooley on Const. Lim. (7 Ed.), p. 531. The general rule, therefore, is that the Legislature may validate retrospectively any proceeding which might have been authorized in advance, even though its act, it has been said, may operate to divest a right of action existing in favor of an individual, or subject him to a loss he would otherwise not have incurred. 6 Am. and Eng. Enc. (2 Ed.), 940. There are, of course, exceptions to this rule, but this case is not within any of them.
In regard to the validity of retroactive legislation, so far as it may affect only expectant or contingent interests, we think the law is well settled that the power thus to deal with such interests resides in the Legislature. Justice Woodbury stated the rule with great clearness, and what he said has been accepted by the courts and law writers as an *Page 142 
authoritative utterance and as declaring the true doctrine upon the subject. Laws enacted for the betterment of judicial procedure and the unfettering of estates so as to bring them into market for sale, can not be regarded as opposed to fundamental maxims, "unless (as he says) they impair rights which are vested; because most civil rights are derived from public laws; and if, before the rights become vested in particular individuals, the convenience of the State necessitates amendments or repeals of such laws, those individuals have no cause of complaint. The power that authorizes or proposes to give, may always revoke before an interest is perfected in the done." Merrill v. Sherburne, 1 N. H., 213; Cooley (7 Ed.), p. 511. Chancellor Kent, in speaking of retroactive (158) statutes, says substantially that while such statutes affecting and changing vested rights are very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void, yet that this doctrine is not understood to apply to remedial statutes, which may be of a retroactive nature, provided they do not impair contracts, or disturb absolutely vested rights, and only go to confirm rights already existing, and proceed in furtherance of the remedy by curing defects and adding to the means of enforcing existing obligations. Such statutes have been held valid when clearly just and reasonable, and conducive to the general welfare, even though they might operate in a degree upon existing rights. 1 Kent Com., 445; Cooley, supra.
So long as the interest remains contingent only, the Legislature may act, for a bare expectancy or any estate depending for its existence on the happening of an uncertain event is within its control, not being a vested right which is protected by constitutional guaranties. If this be so, the nature of estates and their enjoyment must, to a certain extent, and indirectly, be subject to legislative control and modification in order to promote the public welfare. Smith on Statutory and Const. Constr., 412. In this country, estates in tail have very generally been turned into estates in fee simple by statutes the validity of which is not disputed. De Mill v.Lockwood, 3 Blatchford, 56; Lane v. Davis, 2 N.C. 277; Minge v. Gilmour,ibid., 279. Such statutes operate to increase and render more valuable the interest which the tenant in tail possesses, and are not, therefore, open to objection from him, and as no other person in these cases has any vested right, either in possession or expectancy, to be affected by such a change, the expectation of the heir presumptive, which is at best but a contingent interest, must be subject to the same control as in other cases. Cooley (7 Ed.), 512. It has also been held that the Legislature has the power by special act to (159) confirm a conveyance in fee simple of a tenant in tail (Comstock *Page 143 v. Gay, 51 Conn. 45), although, perhaps, this could not have been done if the possibility of issue had become extinct and where the estate of the tenant had ceased to be one of inheritance and a reversionary interest had become vested. 1 Washburn R. P., 81-84, and notes.
Numerous cases can be cited in which such power has been held to belong to the Legislature, where the interest to be affected is only contingent, or at least not vested. Kearney v. Taylor, 15 How., 494; Randall v.Krieger, 23 Wall., 137; 6 Am. and Eng. Enc. (2 Ed.), 957, where the authorities are collected. An illustration of the application of this settled principle is to be found in the decisions of this Court, in which statutes validating certain judicial acts and proceedings have been upheld.Howerton v. Sexton, 90 N.C. 581; Carter v. Rountree, 109 N.C. 29; Bassv. Navigation Co., 111 N.C. 439; Barrett v. Barrett, 120 N.C. 127. See, also, Bank v. Bank, 22 Wall., 276. But it seems useless to pursue this line of thought any further, in view of the recent decision in Springs v. Scott,132 N.C. 548, where Mr. Justice Connor, speaking for the Court in a learned and exhaustive discussion of a similar question, as to the validity of chapter 99, Laws 1903 (Rev., sec. 1590), in respect to its retrospective operation upon the will considered in that case and the estates that are created thereby, demonstrates by reason and authority that the act is valid, even when allowed to reach back and affect estates already created by will, so far, though, only as it is permitted to apply to interests not yet vested. If the Act of 1903 can be thus sustained, we do not see why judicial proceedings, conducted in substantial conformity to its requirements, may not with equal reason be validated by the Act of 1905. The cases are to be distinguished from those where the power has been denied, by the fact that the estate to be affected have not yet become vested so as to be brought under the protection of the Constitution, or of any principles of natural right or justice as expressed in the maxim jura naturae sunt (160)immutabilia, and which are said to be paramount or leges legum, without any express constitutional sanction. Coke Litt., sec. 212. The decision in Springs v. Scott was approved in Hodges v. Lipscomb,133 N.C. 199, a case in which it appeared that the will was made prior to the passage of the Act of 1903 (128 N.C. 57). It was there held that the Act of 1903 operated retrospectively, so as to apply to contingent interests created by a will which had already taken effect by the death of the testator.
If the judicial act of taking the probate of a deed which renders the latter void as to a married woman because of a defect in the privy examination, can be made valid by subsequent legislation, it would seem that a *Page 144 
proceeding to sell land for the purpose of reinvestment, which the Court finds will inure to the benefit of all parties interested, should be subject to legislative action in order to correct errors of procedure, especially when vested rights are not impaired. A closer analogy may be found in those statutes which have been passed to validate judicial proceedings for the sale of land, in which infants who were interested parties had not been personally served with process, though their interests were represented by a guardian ad litem. In those cases, notwithstanding the law required personal service both upon the infant and the guardian adlitem, this Court held such statutes to be a valid exercise of the legislative power. Those cases and this one have this feature in common, that the doctrine of virtual representation applies to each, but the reason in favor of a proceeding like the one we have under consideration is stronger than in the other case, as in the former the only interest which can be affected has not vested and is not likely to vest, while in the latter the infants had vested interests which might be prejudiced by upholding the legislation. When we refer to the principle of "virtual representation" we do not mean to imply that the proceeding to sell this (161) land could be sustained without the aid of the Act of 1905, as being within the rule laid down in Ex parte Dodd, 62 N.C. 97, and fully explained and elucidated by Mr. Justice Connor in Springs v.Scott, supra. Mrs. Anderson, by virtue of the devise, took a fee which is determinable upon her dying without children (Whitfield v. Garris,134 N.C. 24), and not merely a life estate with remainder by implication or construction of law to her children, as was the case with the devisee in Hauser v. Craft, 134 N.C. 319. We have not, therefore, the precise facts which were presented in Ex parte Dodd
or in Springs v. Scott. Whether this case is substantially within the principle of those decisions, and the former proceeding to sell the land can, for that reason, and upon the ground of virtual representation, be declared valid, we need not decide or even consider, as this case can well be disposed of on the other ground, namely, that any defect in the proceeding is cured by the statute.
There was no error in the opinion and judgment of the Court.
Affirmed.
CONNOR, J., did not sit in the hearing of this appeal.
Cited: McAfee v. Green, 143 N.C. 418; Penland v. Barnard, 146 N.C. 381;Richardson v. Richardson, 150 N.C. 551; Smith v. Miller, 151 N.C. 627;Elkins v. Siegler, 154 N.C. 375; Swindell v. Smaw, 156 N.C. 3;Stephens v. Hicks, Ib., 244. *Page 145