(No. 11426.—Judgment affirmed.)

THE PEOPLE *ex rel.* Ezra Patterson *et al.* Plaintiffs in Error, *vs.* F. E. FIFER *et al.* Defendants in Error.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. CONSTITUTIONAL LAW—*a curative act may validate any proceeding lawful in the first instance.* The legislature may by a curative act validate any proceeding which it might have authorized in advance.

2. SAME—*curative act of 1917 validating organization of high school districts is a valid law.* The curative act of June 14, 1917, validating the organization of certain high school districts, provides for such organization and procedure as the legislature might have authorized in the first instance and is a valid law.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding.

C. R. PATTERSON, State's Attorney, JOHN McNUTT, and BRYAN H. TIVNEN, for plaintiffs in error.

J. L. McLAUGHLIN, FRANK J. THOMPSON, EDWARD C. CRAIG, and DONALD B. CRAIG, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The State's attorney of Moultrie county, acting on the relation of some 122 relators, was denied leave by the circuit court of said county to file an information in the nature of *quo warranto* against the respondents, who are the

president and members of the board of education of Sullivan Township High School District No. 100 of Moultrie county. The petition asking leave to file the information recited the district was organized and doing business under what is known as the Township High School act of 1911, (Laws of 1911, p. 505,) which act was held unconstitutional by this court in *People* v. *Weis,* 275 Ill. 581. The petition also set out alleged failures to comply with such unconstitutional act in the attempted organization of the district. Respondents, by affidavits filed in support of their motion to dismiss said petition and to deny leave to file the information, alleged the district was organized in compliance with the provisions of said act of 1911 and showed the various steps that had been taken; alleged that the district embodied seventy-one sections, located in four townships, and embraced the inhabitants of contiguous and compact territory; that the respondents had been elected members of the board of education for said district; that at elections held for such purposes, propositions for purchasing a site and for erecting a building carried; that a bond issue was authorized and bonds had been issued for $75,000; that the bonds had been sold and that a contract for a building and equipment amounting to about $105,000 had been let and the building partially erected; that about $48,000 had been paid on the contract; that teachers had been hired and other expenses incurred and that about 215 pupils were enrolled. These and other matters tending to show estoppel or acquiescence were set up by the respondents. Counter-affidavits were filed by some of the relators, and the circuit court upon the hearing, February 9, 1917, denied the motion for leave to file the information and entered judgment against the relators for costs. This writ of error has been sued out to review that judgment.

Defendants in error filed a motion in this court to abate this proceeding, setting forth in their motion an act of the General Assembly signed by the Governor, and containing

an emergency clause, entitled "An act to legalize the organization of certain high school districts." This act was approved and went into effect June 14, 1917, after this writ of error had been sued out. Section 1 of the act purports to validate all high school districts where "a majority of the inhabitants of any contiguous and compact territory, voting on the proposition, have voted at any election called for the purpose by a county superintendent of schools, in favor of the organization of such territory into a high school district, and when at a subsequent election similarly called and held a board of education has been chosen for such district." Section 2 makes all proceedings had and acts performed by such districts and by the persons elected and acting as the boards of education, which are authorized to be done or performed by the general School law of this State, legal and valid. Section 4 of the act provides that "all pending actions attacking the 'organization of districts coming under the provisions of this act shall abate."

Plaintiffs in error insist that this curative act of 1917 does not expressly apply to districts organized under the 1911 act and hence is not here applicable; also that said act is unconstitutional, as attempting to validate the organization of districts which the legislature had no power to authorize in the first instance. If the curative act is valid and applicable to the district here involved, the action of the trial court in refusing leave to file the information should be affirmed. We will therefore first notice said curative act.

In our opinion none of the objections made by plaintiffs in error to the curative act are valid. It is conceded by them that the legislature may by a curative act validate any proceeding which it might have authorized in advance. This is a well settled rule. (*People* v. *Wisconsin Central Railroad Co.* 219 Ill. 94; *People* v. *City of Rock Island*, 271 id. 412; *People* v. *Militzer*, 272 id. 387; *People* v. *Peltier*, 275 id. 217.) The case of *People* v. *Weis, supra,*

did not hold the legislature had no constitutional power to authorize the organization of high school districts of any contiguous and compact territory in the manner prescribed by section 6 of the act of 1911. The case did hold that section 1 of the act, which provided that any school township containing a school district having a population of 1000 or more and not exceeding 100,000 might be organized into a high school district, was discriminatory and unconstitutional, and that section 1 and section 6 were so interwoven and related that it could not fairly be said the legislature would have passed the act without section 1, and for that reason the entire act was held illegal. The only districts which the curative act purports to validate are districts where "a majority of the inhabitants of any contiguous and compact territory" have voted on the proposition in favor of organizing such territory into a high school district at an election called for the purpose by the county superintendent of schools. This the legislature had the undoubted constitutional power to authorize in advance, and it is not denied that what it might have authorized it may validate. The fact that section 1 of the act of 1911 purported to authorize the organization of high school districts of certain territory, which this court held was unconstitutional, is of no importance in determining the validity of the act before us, for it does not attempt or purport to validate the act of 1911, or districts organized of territory prescribed by section 1 of such act. We may disregard the fact that the law of 1911 was ever enacted. The district here involved was organized out of territory which the law of 1909 authorized being organized into a high school district, but the procedure adopted in organizing it was not in accordance with the procedure prescribed by the law of 1909. (*People* v. *Crossley*, 261 Ill. 78.) If the act of 1911 had never been passed the legislature would have had the same power to validate the organization. In other words, the validity of the curative act is not dependent

upon the act of 1911 or any other act, but the test of its validity is, might the legislature, in the exercise of its constitutional powers, have authorized the organization of the territory into a high school district and by the procedure here adopted? We have no doubt the legislature had such power.

If the curative act is valid it clearly applies to this case. We have considered all the objections urged against the validity of the act, and are of opinion none of them present any good reason for holding said act invalid.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*