BOARD OF EDUCATION OF JOHNSTON COUNTY v. BOARD OF COMMISSIONERS OF JOHNSTON COUNTY.

(Filed 12 April, 1922.)

1. **Constitutional Law—Statutes—Retroactive Laws—Vested Rights—Curative Statutes.**

Where a statute is void only because of a neglected omission of formal constitutional requirements, and is of a subject-matter within its authority, the observation of these requirements in a later act amending the first one cures the defect therein and gives validity thereto, in the absence of intervening rights to the contrary.

2. **Same—Schools—Bonds—County Commissioners.**

In a suit by the commissioners of a school district within a county under the provisions of C. S., 5681, to compel the county commissioners to

deliver to it certain school bonds for negotiation that the voters of the district had approved at an election held according to the statutory provisions affecting them, it appeared that the issue was in the sum of $75,000, or $50,000 in excess of the amount authorized by C. S., 5678, and that the original act had not been passed in accordance with the requirement of our Constitution, Art. II, sec. 14, but was later ratified by the Legislature in conformity therewith. There being no intervening vested rights: *Held*, the former infirmity of the bonds was cured by the later act, and a judgment in favor of the plaintiffs was a proper one.

APPEAL by defendants from *Calvert, J.,* at March Term, 1922, of JOHNSTON.

Controversy without action, submitted upon an agreed statement of facts, to ascertain and determine the validity of certain school bonds, authorized by the voters of Four Oaks School District in Johnston County.

From a judgment sustaining the validity of said bonds and directing that they be delivered as required by C. S., 5681, the defendants appealed. The essential facts are stated in the opinion.

*H. B. Marrow for plaintiff.*
*J. A. Narron for defendants.*

STACY, J. On 12 April, 1921, a majority of the qualified voters of Four Oaks School District, known as Ingrams, No. 8, situated in Johnston County, in an election duly called, under article 39, chapter 95, of the Consolidated Statutes, and amendatory act thereto, chapter 91, Public Laws, extra session 1920, authorized the board of county commissioners of said county to issue bonds not to exceed in amount the sum of $75,000, for the purpose of building, rebuilding, and repairing the schoolhouses of said district and furnishing the same with suitable equipment. C. S., 5676. The validity of said bonds, having been called in question, this proceeding is brought to ascertain and determine their legal status.

It is conceded that chapter 91, Public Laws, extra session 1920, was not passed in accordance with the requirements of Article II, section 14, of the Constitution, and is therefore invalid. It is further conceded that under C. S., 5678, the amount of bonds for any township or school district, authorized by an election, such as the instant one, may not exceed the sum of $25,000. But it is contended that the Legislature, on 19 December, at its extra session 1921, passed an act conforming in all respects to the requirements of Article II, section 14, of the Constitution, specifically ratifying and confirming the results of the election in question, and validating the issuance of the said bonds up to the amount of $75,000.

The only question presented for consideration is whether the bonds, in excess of $25,000 and up to $75,000, could be validated by the curative act of the special session of 1921. It is conceded that the election in all respects was regular, and that a majority of the qualified voters cast their ballots in favor of issuing the bonds, not only for the maximum amount allowed under C. S., 5678 (the validity of which is incontestable), but also for the full amount authorized and voted upon under color of chapter 91, Public Laws, extra session 1920.

The original power of the Legislature to pass the amendatory act of 1920 is admitted, and, as now advised, we see no valid reason why the law-making body could not ratify and confirm that which it had the power to authorize in the first instance, and which power it actually did attempt to exercise. Subject to certain exceptions, the general rule is that the Legislature may validate retrospectively any proceeding which it might have authorized in advance. *Anderson v. Wilkins,* 142 N. C., 157; *Lowe v. Harris,* 112 N. C., 472; Cooley on Const. Lim. (7 ed.), 531; 6 A. & E. (2 ed.), 940; *Sechrist v. Comrs.,* 181 N. C., 514. "The Legislature may ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality and the curative act interferes with no vested rights." *Steger v. Building Asso.,* 208 Ill., 236.

Where the Legislature has undertaken to pass a law, clearly within its power to enact, and by reason of some defect in its passage the statute is rendered ineffectual, we see no reason why the Legislature, in the absence of any opposite intervening rights, could not, by subsequent enactment, ratify and confirm the results of such proceedings as in good faith have been taken and had under the prior defective act. This is the prevailing rule, and it seems to be in accord with the general trend of authorities on the subject. *Anderson v. Wilkins, supra,* and cases there cited. *Belo v. Comrs.,* 76 N. C., 497; 12 C. J., 1094; 6 R. C. L., 321.

Speaking to a similar question in *Thompson v. Lee County* (Iowa), 3 Wall., 327, it was said by the Supreme Court of the United States: "If the Legislature possessed the power to authorize the act to be done, it could, by retrospective act, cure the evils which existed, because the power thus conferred had been irregularly executed. The question with the Legislature was one of policy, and the determination reached by it was conclusive." See, also, *Erskine v. Netson County* (N. Dak.), 27 L. R. A., 696, and note.

Again, in *Grenada County Supervisors v. Brown,* 112 U. S., 261, it was held that a municipal subscription to the stock of a railroad company, in aid of the construction of said road, made as a result of an election, called without proper authority previously conferred, might be

confirmed and legalized by subsequent legislative enactment, unless such legislation were prohibited by the Constitution of the State, and when that which was done would have been legal had it been done under legislative sanction previously given. *Mr. Justice Harlan,* speaking for the Court, said: "Since what was done in this case by the constitutional majority of qualified electors, and by the board of supervisors of the county, would have been legal and binding upon the county had it been done under legislative authority, previously conferred, it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions on such legislation, equivalent to original authority." And to like effect is the decision in *Hayes v. Holly Springs,* 114 U. S., 120.

Under the foregoing principles, we think the judgment of his Honor sustaining the validity of the bonds in question should be upheld.

Affirmed.