ANDERSON et al. v. SCHOLES et al.
(two cases).

Nos. A–5288, A–5299.

United States District Court
Alaska, Third Division.

April 11, 1949.

682

Stanley J. McCutcheon and Buell A. Nesbett, both of Anchorage, Alaska, for plaintiffs.

J. Gerald Williams and Raymond E. Plummer, both of Anchorage, Alaska, for defendants.

DIMOND, District Judge.

Motion to quash service of summons. Granted.

In these two cases the plaintiffs and the defendants are, respectively, identical. In 5288 the plaintiffs brought suit for breach of contract of employment, claiming wages in the sum of $12,105.36. It is alleged in the plaintiffs' complaint that the contract of employment was made in the Territory of Alaska and that the defend-ants in entering into the contract, acted by and through the defendant Howard Scholes, one of the partners acting for the firm.

In 5289 the same plaintiffs have sued for false arrest and false imprisonment claiming damages in aggregate of $160,-000.00. In their complaint, the plaintiffs allege that the defendants acted by and through their agent, one Thomas J. Mc-Cartney, and that the false arrest and false imprisonment took place in the Territory of Alaska.

From the plaintiffs' complaints in both of these cases it would appear that the defendants during a part of the year 1948 were engaged in carrying on construction work at Adak Island, Alaska, and that both causes of action of the plaintiffs against the defendants arose in connection with the defendants' operations in carrying on such work.

Both actions were brought on December 1, 1948. It appears that at that time neither of defendants was within the Territory of Alaska nor did the defendants have within the Territory any office, dwelling house or abode; nor were the defendants at that time carrying on any work in the Territory; nor did the defendants at that time have any agent or representative in the Territory.

Being unable to secure personal service of summons upon either of the defendants within the Territory of Alaska, the summons in each case was served by leaving a certified copy thereof with the Clerk of this Court. Affidavits of such service were made and filed on December 1, 1948. The Clerk mailed copy of summons and complaint in each case to "Pacific Tractor and Equipment Company, 8755 East Marginal Way, Seattle, Washington", not to the individual defendants, accompanied by a letter which, except as to the number of the case, reads as follows:

"December 1, 1948
Pacific Tractor & Equipment Company
8755 East Marginal Way
Seattle, Washington
Gentlemen:

Pursuant to the laws of the Territory of Alaska, I enclose herewith a certified copy

of the Complaint and Summons in Cause No. A-5288, entitled JOHN A. ANDERSON et al vs. HOWARD J. SCHOLES et al.

Very truly yours,

M. E. S. BRUNELLE
Clerk"

Service of summons in each case was made under the Sixth Subdivision of Section 55-4-6 of the Alaska Compiled Laws Annotated, hereinafter referred to as A.C.L.A., the text of which is quoted:

"Sixth. (Action against partnership.) If against a partnership, upon a member of such partnership and if the members of the partnership doing business in the Territory are not known or cannot be served in the Territory, then to the person having control of the business of such partnership or upon the Clerk of the District Court in the division in which said partnership is or has been doing business, and the Clerk of the District Court is hereby directed to send a certified copy of the summons and complaint to the home office of the corporation or partnership. If the home office of the partnership cannot be ascertained after reasonable diligence, an affidavit so showing shall be made and filed in the cause. The service so made upon the clerk shall be valid service upon the partnership."

The defendants have appeared specially and moved to quash the service, and have objected to the jurisdiction of the Court upon the grounds: (1) that the defendants were not doing business within the Territory of Alaska at the time the actions were commenced or thereafter: (2) that the certified copy of summons and complaint in each case was mailed to "Pacific Tractor and Equipment Company", and not to either of the defendants: (3) that the provisions of Alaska law concerning service of process on partnerships under which service upon defendants was attempted to be made in each action is void because it violates the due process clause of the Fifth Amendment, the privileges and immunities clause of Article IV, Section 2, and the equal protection clause and the privileges and immunities clause of the Fourteenth Amendment.

The provision of the Alaska laws above-quoted is part of an Act of the Territorial Legislature, Chapter 94, passed at the session of 1931. It did not appear in the Code of Civil Procedure enacted by Congress for Alaska and approved June 6, 1900, 31 Stat. 333.

Two questions are now before the Court for decision:

First, whether the Alaska statute above-quoted, concerning service of summons upon a partnership, violates any of the provisions of the Constitution of the United States; and,

Second, if the law does not transgress Constitutional limits, whether the service in each of the cases here under consideration sufficiently complied with the law as written.

Under the opinion and decision of the Supreme Court of the United States in the case of Pennoyer v. Neff, given in 1877, 95 U.S. 714, 24 L.Ed. 565, it was long considered settled that a personal judgment is without validity if it be rendered by a State court in an action upon a money demand against a non-resident of the State upon whom no personal service of process was made within the State. The opinion in this case by Justice Field reveals the studious care with which the entire subject was examined and determined and is supported by persuasive authority so that it may be considered as in harmony with the general trend of judicial opinion of that time. The one dissent, that of Justice Hunt, does not seriously challenge the logical and practical validity of the conclusion arrived at by the Court and the reasons therefor expressed in Justice Field's opinion. However, as indicating the penetrating and analytical thought given to the subject by the Court, it is appropriate to quote here the limits of the rule as expressed in the opinion and appearing on pages 735 and 736 of 95 U. S.:

"Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such part-

nership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-resident both within and without the State. As was said by the Court of Exchequer in Vallee v. Dumergue, 4 Exch. 290, 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.' See also Lafayette Insurance Co. v. French et al., 18 How. 404 [15 L.Ed. 451], and Gillespie v. Commercial Mutual Marine Insurance Co., 12 Gray, Mass., 201 [71 Am. Dec. 743]. Nor do we doubt that a State, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their interest subject to the conditions prescribed by law. Copin v. Adamson, Law Rep. 9 Ex. 345."

The principle of law thus announced in Pennoyer v. Neff appears to have been adhered to without serious challenge for many years. But in more recent times, and with a view of relieving the injustices some times resulting from a rigid adherence in all cases to the rule so announced, and probably impelled also by conditions arising from the development and extension of transportation facilities, as well as of trade and commerce of all descriptions, whereby State lines are virtually ignored, the legislatures of each of many of the States have sought to protect their own citizens as to breaches of contract, frauds and torts, and perhaps other causes of action, committed within the State or arising within the State, against non-residents of the State upon whom personal service of process could not be had within the State, by providing for substituted service upon such non-residents or citizens of another State in actions brought in the courts of the State where the causes of action arose. The Supreme Court in Pennoyer v. Neff was sufficiently careful to foresee and suggest that provision might be made for at least some of such classes of cases.

Putting aside for the present other opinions and decisions, the matter was considered by the Supreme Court in the year 1918 in the case of Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250, wherein the doctrine announced in Pennoyer v. Neff was rigidly adhered to.

In the case of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, decided in 1927, the Supreme Court sustained a decision of the Supreme Judicial Court of Massachusetts holding valid provisions of a Massachusetts law which declared that use of the State's highways by a non-resident should be deemed equivalent to appointment by him of the registrar of the State as his attorney upon whom process might be served in any action growing out of any accident or collision in which the non-resident might be involved while operating a motor vehicle upon the highways of the State. The law in the Massachusetts case provided for service of process by leaving a copy of the same and a fee with the registrar or in his office, and for the sending of notice of process to the defendant forthwith by registered mail as well as for evidence of actual receipt of the same by the defendant. The law further provided that the non-resident when so served might have necessary continuances to afford him a reasonable opportunity to defend the action. It is evident from a reading of the opinion of the Supreme Court, that the Massachusetts statute was carefully drawn so that actual notice in every case would be had by the defendant.

The care necessary to be exercised in drafting such statutes, in order to insure notice to the defendant, was expressly pointed out by the Supreme Court in Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, opinion by Chief Justice Taft. It was

there held that a statute—in that case a statute of the State of New Jersey—which provided that in actions by residents against non-resident defendants for personal injuries resulting from operations by non-residents of their motor vehicles on the State highways, service of summons made on the Secretary of State as their agent, was invalid because it contained no further provision making it reasonably probable that notice of such service would be communicated to the defendants. From the opinion in this case it appears that the defendant did have actual notice because personal service of process was made upon him at his domicile, but such service, not having been provided by law, was held ineffectual. The following is quoted from the opinion, 276 U.S. at page 24, 48 S.Ct. at page 262:

"These cases and others indicate a general trend of authority toward sustaining the validity of service of process, if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice, and that is the principle that we think should apply here.

"But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it cannot, therefore, supply constitutional validity to the statute or to service under it."

It is deserving of note that three of the Justices, Brandis, Holmes and Stone, dissented from the opinion of the Court.

In 1930, the Supreme Court again considered the subject in a suit arising in the State of Iowa, Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097. In this case Henry L. Doherty, a citizen of New Jersey, established a business office in Iowa and carried on business as an individual continuously in the State thereafter. He was not a partner in any firm, nor did he, so far as the opinion discloses, appear in Iowa at any time. Suit was brought against him for alleged fraud in the sale of stock and service was made upon his Iowa agent in

charge of his office in that State under an Iowa statute which had been construed by the Supreme Court of the State as permitting such service. The judgment so rendered against Doherty in Iowa was sustained by the Supreme Court of the United States, but it was pointed out in its opinion, 294 U.S. at page 627, 55 S.Ct. 553, that under the Iowa statute as construed by the Supreme Court of Iowa four things were essential to the validity of the service: first, the defendant must have an office or agency in the county; second, it must be a county other than that in which he resides; third, the action must grow out of, or be connected with, the business of that office or agency; and, fourth, the agent or clerk upon whom service is made must be employed in such office or agency. It was held by the Supreme Court of Iowa under the laws of the State that when a non-resident established an office or agency for the transaction of business in any county of the State, he thereby voluntarily appointed his own agent in charge of his office or agency as one upon whom substituted service in an action in personam growing out of the operations of that office or agency might be made, 294 U.S. at page 627, 55 S.Ct. 553. The opinion given by the Supreme Court in the case distinguished Flexner v. Farson, supra, but a careful comparison of the opinions in the two cases shows the grave difficulty of reconcilement. In the case of Henry L. Doherty & Co. against Goodman, supra, the opinion of the Supreme Court of Iowa is to be found in 218 Iowa 529, 255 N.W. 667. That Court adhered to its carefully considered and stated opinion and decision in the case of Davidson v. Henry L. Doherty & Co., 214 Iowa 739, 241 N.W. 700, annotation to which appears in 91 A.L.R. 1308.

From the cases above referred to and others on the subject it is safe to conclude that under its police power any State or Territory may provide for service of summons upon individuals or members of a copartnership not domiciled in the State or Territory nor served therein, in at least some causes of action against non-residents arising in such State or Territory; but in all such cases ample pro-

vision must be made by the mode and manner of service for the giving of actual notice to the defendants and for furnishing defendants ample opportunity to appear in the actions so brought against them and offer whatever defences they may have; nor may there be any discrimination against non-residents even though "literal and precise equality" may not be attainable, as indicated in Hess v. Pawloski, supra, 274 U.S. at page 356, 47 S. Ct. at page 633, 71 L.Ed. 1091. A statute which fails substantially in any of these requirements is not in harmony with the Constitution as construed in Pennoyer v. Neff and subsequent opinions and decisions of the Supreme Court of the United States.

It is not possible under the Constitution to forbid citizens of States to do business in Alaska; nor may they be discriminated against in any fashion if they undertake to carry on business therein.

The decisions of the Supreme Court of Iowa, affirmed as one of them has been by the Supreme Court of the United States in Henry L. Doherty v. Goodman, supra, are conclusive upon this point. Any legislation on the subject, to be valid, must apply equally to residents and non-residents.

One who engages in business in Alaska has the benefit of the protection of local laws. One who comes here for any other purpose enjoys the same protection. It would appear reasonable and just that although such persons may be citizens of one of the States, they should be required to afford to those asserting claims against them of the classes of cases and under the circumstances outlined in Pennoyer v. Neff and Goodman v. Henry L. Doherty & Co., for causes of action arising in the Territory, an opportunity to have those claims determined in the courts of the Territory. Pennoyer v. Neff recognizes the validity of that conclusion, but within limits not yet clearly defined. Goodman v. Henry L. Doherty & Co. explicitly affirms it as to one certain class of cases.

■ The Alaska statute above quoted is defective in several respects

1. It fails to limit its scope to transactions taking place in the Territory of Alaska. For all that appears in the law, the plaintiffs' suit might have been brought upon a contract entered into in the State of New York and to be performed in that State, or upon a tort committed in that State.

2. Distinction is made between individuals and members of partnerships which can not be justified in law. The law prescribing mode of service of summons on an individual is to be found in the fifth subdivision of Section 55-4-6, A.C.L.A., as follows:

"Fifth. (Personal service on defendant.) In all cases, to the defendant personally, or if he be not found, to some person of the family above the age of fourteen years at the dwelling house or usual place of abode of the defendant."

A partnership is not a unit nor an entity but merely an aggregation of individuals doing business together each of whom ordinarily is authorized to bind the others as to the matters within the scope of their partnership business. To provide for substituted service upon partnership where no provision is made for service upon individuals, under like circumstances and as to causes of action arising in Alaska is a discrimination that is not legally justified.

3. No adequate provision is made in the statute for actual notice to the persons served. We have seen that in the State of Iowa it is necessary to make the substituted service upon the agent of the defendant within the State, and in Massachusetts meticulous care is taken to see that the non-resident defendant has actual notice of the suit and is afforded ample opportunity to appear and defend. A statute undertaking to do what is set out in the Sixth subdivision of Section 55-4-6, A.C.L.A., must make equally ample provisions for actual notice even though in some cases, despite the utmost diligence, it may be impossible to give such actual notice. We have seen in Wuchter v. Pizzutti that notice—actual notice—not provided for by law is futile.

Defendants say that the statute under consideration offends not only against the Fifth Amendment to the Constitution but also against Article IV, Section 2, of that

instrument, and against the Fourteenth Amendment.

█ The privileges and immunities clause of Article IV, Section 2, refers to "citizens" only. It must be assumed that the word "citizens" as so used is identical in meaning with the word "citizens" used in the Fourteenth Amendment and defined therein, even though the Fourteenth Amendment came into the Constitution more than three quarters of a century after the Constitution was adopted and went into operation. Nothing in the pleading in either of the cases now under consideration indicates that the defendants are citizens of the United States, or of any State or of the Territory of Alaska.

█ Can a person be considered a "citizen" of Alaska in the same constitutional sense as that of a "citizen" of a State? The distinction between a State and a Territory is obvious, because a State in some of its aspects and within constitutional limits is sovereign. No such claim has ever been made for any Territory except for the apparently casual observation to be found in Moore v. People of State of Illinois, 14 How. 13, 55 U.S. 13, at page 20, 14 L.Ed. 306. So we usually speak of residents of Alaska, not of its citizens. The residents of Alaska may be, and most of them are, citizens of the United States. Perhaps that is all. Alaska does not yet enjoy the political status which would bring its residents within the constitutional meaning and definition of "citizens" as applied to citizens of the United States who are domiciled in the States and therefore citizens of the States.

█ Nor does the Fourteenth Amendment offer any protection to the defendants in these cases because the due process clause of the Fourteenth Amendment was designed to apply to the States and does not extend to the Territories or the District of Columbia. Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246; Wight v. Davidson, 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900; Territory v. O'Connor, 5 Dak. 397, 41 N.W. 746, 3 L.R.A. 355.

█ The application of the Fifth Amendment to the cases before us cannot be doubted. It is obvious that whatever in the Constitution limits or restrains the governmental powers of the United States must equally limit and restrain the authority of a territorial government created by a legislative act of the United States Government. Attempted service of summons under Section 55-4-6, subdivision 6, A.C.L.A., for the reasons stated, runs counter to the due process clause of that Amendment. In that Amendment the word "persons" is used, not "citizens". See Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222. It is therefore unnecessary to determine whether Section 54-4-6, subdivision 6, A.C.L.A., was complied with in the cases under consideration.

In each case the motion to quash service of summons is granted. Written orders may be prepared and submitted accordingly.