ALASKA S. S. CO. v. MULLANEY, Commissioner of Taxation, Territory of Alaska.
No. 6069–A.

United States District Court
District Alaska, First Division.
June 25, 1949.

562

Faulkner, Banfield & Boochever, Juneau, Alaska, Bogle, Bogle, & Gates, Seattle, Wash., for plaintiff.

J. Gerald Williams, Atty. Gen., and John Dimond, Asst. Atty. Gen., of Alaska, for defendant.

Ralph J. Rivers, Juneau, Alaska, amicus curiae.

FOLTA, District Judge.

The first income tax statute for the Territory was enacted on January 22, 1949, as Ch. 3 of the Extraordinary Session of the Legislature convened on January 6, 1949. Because doubt was entertained as to the validity of the composition of the Extraordinary Session, the Legislature which convened in regular session on January 24, 1949, re-enacted its provisions, adding one for the ratification of the tax withholdings already made under the original act, and this act became Ch. 115.

In this suit plaintiff challenges not only the validity of the Extraordinary Session, and consequently the validity of the original income tax statute and everything done in pursuance thereof on the ground that the membership thereof was composed of those who were elected in 1948 and 1946 instead of those elected in 1946 and 1944, whose terms had not expired until the regular session was convened, but also challenges the validity of Chapter 115 on the following grounds: (1) that the provision for the adoption of future amendments of the Federal Income Tax Law and the regulations thereunder constitutes a delegation of legislative authority to Congress and the Commissioner of Internal Revenue; (2) that the act is lacking in uniformity because a tax on income, being a property tax, cannot be graduated; (3) that the act burdens interstate commerce in the constitutional sense; (4) that payment of the tax is made a condition precedent to the right to carry on any business, including that in interstate commerce; (5) that the formula prescribed for the apportionment of the wages of plaintiff's nonresident seamen is discriminatory because it has not, in express terms, been made applicable to other nonresident employees of the plaintiff; (6) that the statute is void for indefiniteness and uncertainty because it fails to define the terms "income" in Section 5A(2) (a), "days in port" in the succeeding paragraph, and "continental shelf" in Section 5 B(1); (7) that the withholding provision, so far as seamen are concerned, is in conflict with Section 601, Title 46, U.S.C.A., and therefore void; (8) that Section 7D of the statute delegates legislative authority to the Tax Commissioner.

Plaintiff operates steamships between the State of Washington and the Territory of Alaska, employing more than 700 seamen whose wages are paid at the end of each voyage in Seattle. In a suit against the plaintiff, filed in the Federal Court in Seattle, the Sailors' Union of the Pacific has obtained an injunction, restraining the plaintiff from paying to defendant the tax withheld from the wages of its members under Chapters 3 and 115. Plaintiff asserts that similar suits by other maritime unions on behalf of those members who are employed by plaintiff have been forestalled only upon agreeing to similarly impound

the tax withheld from their wages pending the outcome of this litigation.

## 1. Validity of the Extraordinary Session

Plaintiff contends "that the members of the Legislature elected at the general Territorial election in October, 1946, being required to take office on the fourth Monday in January, 1947, and having a term of two years fixed for the members of the House and four years for the members of the Senate, were entitled to hold office and to exercise the functions of legislators for two years and four years, respectively, from the fourth Monday in January, 1947, and that therefore when the Extraordinary Session was called to convene on January 6, 1949, that session should have been composed of those members who were elected in 1946, and not those who were elected in 1948. However, those who were elected in 1948 were called, appeared, organized and attempted to function as a Legislature regularly called, and they passed the first income tax law, Chapter 3 of the Laws of the Extraordinary Session, 1949."

Although the Organic Act for the Territory, Act of August 24, 1912, 37 Stat. 513, 48 U.S.C.A. § 67 et seq., prescribes the terms of members of the House and of the Senate at two and four years, respectively, it does not fix the time for the commencement thereof. However, it does provide, as it has provided ever since its enactment despite amendments, that immediately after assembling the members of the Senate shall, by lot or drawing, be divided into two classes; that the seats of the members of the first class shall be vacated at the end of two years and the seats of the members of the second class shall be vacated at the end of four years, Sections 68 and 69a. The general election is held in October of the even-numbered years, and the Legislature is regularly convened on the fourth Monday in January of the odd-numbered years. 48 U.S.C.A. § 74. The successful candidates, therefore, take their seats at the first regular session following their election.

It would, therefore, appear that the provision for vacating the seats of the members of the Senate at the end of two and four years, 48 U.S.C.A. §§ 68 and 69a, re-ferring as it does to the time of taking their seats upon assembling for the regular session, contemplates that the terms shall begin upon taking their seats. But if any doubt remains on this score, it would seem to be dispelled by the fact that since it cannot be known until after the determination by lot or drawing whose term shall be vacated at the end of two or four years, manifestly their terms cannot begin until such determination. If this is the correct view, then it follows that the terms of the members who were elected in October, 1946, who took their seats on the fourth Monday of 1947, and of the long-term members elected in 1944, did not expire until the convening of the Legislature in regular session on January 27, 1949, and that they, instead of those elected in 1948 and 1946, respectively, who were called, should have composed the membership of the Extraordinary Session of the Legislature convened on January 6, 1949. It would likewise follow, if this view is correct, that the acts of the Legislature at its Extraordinary Session, including the enactment of the first income tax law and everything done pursuant thereto, were without authority and, hence, void.

Defendant contends that the terms began when the Canvassing Board issued the certificates of election under the Act of March 26, 1934, 48 Stat. 465, 48 U.S.C.A. § 144a, which provides, so far as is material to this controversy, that:

"The said canvassing board shall commence the performance of its duties at the office of the Governor within ten days after the second Tuesday in October in each year in which an election is held * * * and shall continue with such work from day to day until the same is completed. * * * In case it shall appear to the board that no election return, as herein prescribed, has been received by the Governor from any precinct in which an election has been held, the said board may accept in place thereof the certified copy of the certificate of election for such precinct received from the clerk of the court, and may canvass and compile the same with the other election returns. The canvassing board shall terminate the canvass and issue the certificates of election so soon as it is satisfied that no

missing return would, if received, change the result of a canvass based upon the returns at hand, but when the board has information that an election was held at any precinct from which no return has been received and which return, if received, the board has reason to believe will affect the result of the election, it shall be the duty of the board to await the arrival of such return until 4 o'clock postmeridian on the 10th day of December in the year during which the election is held, but no longer, and any return received after that time shall not be counted by the board.

"Upon the completion of the said canvass as herein provided, the said board shall declare the person who has received the greatest number of votes for the office for which he is a candidate elected to such office for the term for which he is elected, and shall issue and deliver to him in writing, under their hands and seals, a certificate of his election."

It is clear that so far as terms are concerned, all that the Canvassing Board is empowered to do is to declare the term for which the successful candidate has been elected, not to fix the time for its commencement. That a definite time for the commencement of the terms of the members of the Legislature was intended is not only implicit in the provisions of the Organic Act already discussed, but also is apparent upon general considerations. These lead to the conclusion that the terms of the members of the Legislature elected in 1946 began upon their assembling for the regular session on the fourth Monday of January, 1947, and taking the oath of office. Farrelly v. Cole, 60 Kan. 356, 56 P. 492, 500, 44 L.R.A. 464. Further support for this conclusion may be found in the provision of Section 74, Title 48 U.S.C.A.:

"The Legislature of Alaska shall convene at the capitol at the city of Juneau, Alaska, on the fourth Monday in January in the year 1941 and on the fourth Monday in January every two years thereafter; but the said legislature shall not continue in session longer than sixty days in any two years unless again convened in extraordinary session by a proclamation of the Governor, which shall set forth the object thereof and give at least fifteen days' notice in writing or by telegram or radiogram to each member of said legislature, and in such case shall not continue in session longer than thirty days. The Governor of Alaska is hereby authorized to convene the legislature in extraordinary session for a period not exceeding thirty days when requested to do so by the President of the United States, or when any public danger or necessity may require it. Apr. 18, 1940, c. 105, § 1, 54 Stat. 111."

Obviously, the word "again" in the foregoing provision would be rendered meaningless if any extraordinary session of the Legislature were called for a date subsequent to the issuance of the certificates of election but before the convening of the regular session, as was done in this instance.

■ Accordingly, it is my opinion that the Extraordinary Session was not constituted in accordance with law; that the original income tax statute enacted during the session was invalid and, therefore, that the tax withholdings made pursuant thereto were likewise invalid unless it was in the power of the Legislature to ratify them in accordance with Section 16 of the act. Whether this ratification provision of Section 16 may be given effect depends on whether the Legislature could have enacted the withholding provisions of Ch. 3. Manifestly, the invalidity which would preclude ratification must inhere in the act. If it merely goes to the composition of the Legislature, and the act is one within the legislative power, it would appear that it could be ratified. Whether the act, or at least the withholding provisions of the act if they are separable, were within the power of the Legislature, therefore, becomes the next subject of inquiry.

## 2. Delegation of Legislative Functions to Congress and the Commissioner of Internal Revenue

The tax levied under the act is upon the income tax payable to the United States under the Internal Revenue Code. This adoption of the provisions of the Federal Income Tax Laws and Regulations made pursuant thereto, would make possible the administration of the act at a minimum of

cost with all the attendant benefits of uniformity. But, manifestly, the administration of the statute requires a strict and immediate conformity with subsequent amendments of the Federal Law and Regulations. That the Legislature was fully cognizant of this requirement is attested by the provisions of Section 3B that:

"Whenever the Internal Revenue Code is mentioned in this Act, the particular portions or provisions thereof, as now in effect or thereafter amended, which are referred to, shall be regarded as incorporated in this Act by such reference and shall have effect as though fully set forth herein.

"Whenever any portion of the Internal Revenue Code incorporated by reference as provided in Paragraph (1) of this subsection refers to rules and regulations promulgated by the United States Commissioner of Internal Revenue, or hereafter so promulgated, they shall be regarded as regulations promulgated by the Tax Commissioner under and in accord with the provisions of this Act, unless and until the Tax Commissioner promulgates specific regulations in lieu thereof conformable with this Act."

It is this part of the statute which is attacked as an attempt to delegate legislative power to Congress and the Commissioner of Internal Revenue. It must be admitted, however, that there is no delegation of authority to Congress or the Commissioner of Internal Revenue in expressed terms. The act merely provides for the conformity pointed out which is necessary to its life. Nevertheless, the weight of numerical authority supports the position of plaintiff and would, if deemed controlling, preclude the Territory from availing itself of the advantages to be gained from adopting the Federal Law. State v. Webber, 125 Me. 319, 133 A. 738; Florida Commission v. State, 155 Fla. 772, 21 So.2d 599; Santee Mills v. Query, 122 S.C. 158, 115 S.E. 202; Featherstone v. Norman, 170 Ga. 370, 153 S.E. 58, 70 A.L.R. 449; In re Opinion of Justices, 239 Mass. 606, 133 N.E. 453.

■ Obviously, if the Territorial Legislature were in session continuously, it would be in a position to adopt immediately each amendment to the Federal Laws and Regulations. But since it convenes biennially for a session of sixty days only, there was no alternative but the one to which it resorted. However, Ex parte Lasswell, 1 Cal.App.2d 183, 36 P.2d 678, cited by the plaintiff supports the defendant's contention. In that case a provision in the California Industrial Recovery Act which, as in the instant case, had adopted a Federal act, to the effect that when the Federal authorities had fixed a code for the operation of any industry, that code would automatically become the state code, was upheld as against the contention that it was an unconstitutional delegation of legislative power. 36 P.2d pp. 684–687. I am inclined to agree with the reasoning of this decision, and in any event the objection is not available to the plaintiff because it is not shown that there has been any amendment of either the Federal law or regulations since the enactment of Chap. 115 and, hence, it is not perceived how the constitutional rights of the plaintiff could have been infringed. Cf. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

## 3. Uniformity

■ The objection that the statute is wanting in uniformity and, hence, offends the due process and equal protection clauses of the Fourteenth Amendment is predicated upon the proposition that a tax on income is a property tax and cannot be graduated. In support of the proposition that it is a tax on property, Pollock v. Farmers Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, is cited. But aside from the fact that the Fourteenth amendment does not apply to the Territories, South Puerto Rico Sugar Co. v. Buscaglia, 1 Cir., 154 F.2d 96, 101; Anderson v. Scholes, D.C., 83 F.Supp. 681, 687; cf. Haavik v. Alaska Packers Association, 263 U.S. 510, 44 S.Ct. 177, 68 L.Ed. 414, it would appear, from what was said concerning the nature of a tax on income in Brushaber v. Union Pacific R. Co., 240 U.S. 1, 16, 17, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann. cas.1917B, 713, and People of the State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 315, 57 S.Ct. 466, 468, 81 L.Ed. 666, 108 A.L.R. 721, that the implications of the Pollock case were misunderstood. Moreover, inequalities of the kind pointed out

are not sufficient to invalidate tax legislation. Beers v. Glynn, 211 U.S. 477, 29 S. Ct. 186, 53 L.Ed. 290; St. Louis Land Co. v. Kansas City, 241 U.S. 419, 429, 36 S.Ct. 647, 60 L.Ed. 1072. And speculation of the kind indulged in as to hardship and injustice in hypothetical cases cannot be considered by the courts.

### 4. Burden of Interstate Commerce Formula Apportionment

■ The contention that the tax burdens interstate commerce in the constitutional sense is based on the fact that in hypothetical cases in which gross receipts (One of the factors of the formula set forth in Section 5A(1) (2) for apportioning income attributable to local activities) are derived wholly or nearly so from interstate commerce or outside activities, such as the sale of gold or salmon, and the components of the remaining factors are so negligible as to have little countervailing effect, the resulting fraction, so far as its numerator is concerned, makes the formula discriminatory to such an extent as to result in practical effect in imposing a burden on interstate commerce. The formula may be expressed as follows:

450, 463, 65 S.Ct. 1384, 89 L.Ed. 1725, it cannot be heard to object on this ground.

### 5. Condition Precedent

■ The objection that Section 12C makes the payment of the tax a condition precedent to the right to carry on any business, including that in interstate commerce, is not reasonably susceptible of such a construction. The forfeiture of the license, where one may be required under other statutes, is made one of the consequences of nonpayment of the tax, not a condition to engaging in business in the first instance. Obviously, a forfeiture could not be incurred until after engaging in the business and becoming delinquent. Cf. Crutcher v. Kentucky, 141 U. S. 47, 56–7, 11 S.Ct. 851, 35 L.Ed. 649; International Textbook Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L. R.A.,N.S., 493, 18 Ann.Cas. 1103.

### 6. Formula

■ It is also objected that no formula has been prescribed for the apportionment of salaries and wages of plaintiff's nonresident employees who perform serv-

$$\begin{pmatrix} \text{Fed. Income} \\ \text{Tax} \\ \text{without} \\ \text{Deduction of} \\ \text{Alaska Tax} \end{pmatrix} x \times \left( \frac{\text{Local Gross Receipts}}{\text{Gross Rec. Everywhere}} + \frac{\text{Payroll in Alaska}}{\text{Payroll Everywhere}} + \frac{\text{Tangible Local Property}}{\text{Tangible property Everywhere}} \right) \times 10\% = \text{Tax}$$

However, not only are plaintiff's operations governed by another formula set forth in Section 5A(2) (b) but specific provision is also made by Section 5(2) (c) for cases in which either formula produces inequitable results. Moreover, since it is not shown that the plaintiff belongs to the class referred to in the hypothetical cases—a prerequisite to a consideration of the objection, Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 51 L.Ed. 415, 9 Ann.Cas. 736; Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 544, 34 S.Ct. 359, 58 L.Ed. 713; Alabama State Federation of Labor v. McAdory, 325 U.S.

ices in the Territory for a few weeks each year. But such an objection is not available to an employer. Mt. Timber Co. v. Washington, 243 U.S. 219, 234, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642; Jeffrey Manufacturing Co. v. Blagg, 235 U. S. 571, 35 S.Ct. 167, 59 L.Ed. 364; Virginian Ry. v. Federation, 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789.

### 7. Indefiniteness and Uncertainty

The statute is attacked for indefiniteness and uncertainty because it fails to define the terms "income" in Section 5A(2) (a), "days in port" in the succeeding para-

graph, and "continental shelf" in Section 5B(1).

■ The context in which the term "income" is used makes its meaning reasonably clear. As to the term "days in port", since precision is not required in an apportionment formula and vessels are rarely in port except to discharge or receive passengers or freight, the term may be construed as meaning the time the vessels are moored to a wharf or pier. Cf. Pierce Oil Co. v. Hopkins, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593. The term "continental shelf" would not appear to be any more indefinite than the term high seas or limits of territorial waters. "Continental shelf" is defined by lexicographers as that portion of the ocean floor adjacent to a continent, within the one hundred fathom curve. It was not shown whether this curve has been delineated on charts of the United States Coast and Geodetic Survey. If it has not, it is obvious that there would be no way of determining whether a vessel in some cases was beyond or within the one hundred fathom line. But since the act contains a separability provision in Section 15, the clause in which the term "continental shelf" is employed must be examined to determine whether it may be eliminated without affecting the remainder of the act. The section containing the term reads that:

"The tax levied by this subsection shall apply to that portion of the voyage pay of vessel personnel of interstate carriers engaged in the Alaska trade which is earned in the waters of Alaska, *including the waters over the continental shelf*. The tax shall likewise apply to that portion of the pay earned in Alaska of the personnel of carriers operating vehicles or airplanes on land or in the air on routes to and from Alaska."

■ Clearly the term is separable. El Paso & N. E. Ry. Co. v. Gutierrez, 215 U. S. 87, 95–97, 30 S.Ct. 21, 54 L.Ed. 106; Electric Bond & Shares v. Commission, 303 U.S. 419, 434, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; Watson v. Buck, 313 U.S. 387, 396, 397, 61 S.Ct. 962, 85 L.Ed. 1416. And moreover its elimination and the consequent restriction of the statute to operations in territorial waters would merely limit the operation of the statute within the conceded jurisdiction of the Territory.

## 8. Conflict with Federal Statutes relating to Seamen

■ It is also urged that the statute, so far as it requires withholding of the tax from the wages of seamen, is in conflict with 46 U.S.C.A. § 601 providing:

"No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court, and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages or of any attachment, encumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage made prior to the accruing thereof shall bind the party making the same, except such allotments as are authorized by this title. This section shall apply to fishermen employed on fishing vessels as well as to seamen: Provided, That nothing contained in this or sections 80, 569, 596, 597, 599, 656, 673, 701, 703, 712, and 713 of this title shall interfere with the order by any court regarding the payment by any seaman of any part of his wages for the support and maintenance of his wife and minor children. Mar. 4, 1915, c. 153, § 12, 38 Stat. 1169."

and, hence, void. In support of this plaintiff cites American Hawaiian Steamship Co. v. Fisher, D.C., 82 F.Supp. 193. I am of the opinion, however, that there is no conflict between the two statutes.

## 9. Delegation of Authority to Tax Commissioner

Section 7D authorizes the Tax Commissioner to:

"Credit or refund all overpayments of taxes, all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that are found unjustly assessed or excessive in amount, or in any manner wrongfully collected. The Tax Commissioner shall

568

by means of rules and regulations specify the manner in which claims for credits or refunds shall be made, including adjustments with persons whose sole income in Alaska consists of wages or salary, prescribe limitations and give notice of allowance or disallowance. These rules and regulations shall be based upon the provisions of Secs. 321 and 322 of the Internal Revenue Code insofar as such provisions are consistent with other provisions of this Act. When refund is allowed to a taxpayer, same shall be paid out of the general fund on a Territorial warrant issued pursuant to a voucher approved by the Tax Commissioner."

The plaintiff contends that this constitutes a delegation of legislative authority. The authority conferred would, however, appear to be within the test laid down in Bowles v. Willingham, 321 U.S. 503, 512–514, 64 S.Ct. 641, 88 L.Ed. 892, in which the Administrator of the Office of Price Administration was empowered to fix maximum rents which, in his judgment, would be generally fair and equitable in any defense rental area whenever in his judgment that action was necessary or proper in order to effectuate the purposes of the act, and further empowered to make adjustments for such relevant factors as he may determine and deem to be of general applicability, and to provide for such adjustments and reasonable exceptions as in his judgment are necessary and proper in order to effectuate the purposes of the act.

Accordingly, it is my opinion that the act is valid, from which it follows that it was within the power of the Legislature convened in regular session on January 24, 1949, to ratify and validate what was done under the withholding provisions of Ch. 3, People ex rel. Patterson v. Fifer, 280 Ill. 506, 117 N.E. 790; Board of Education v. Board of Commissioners, 183 N.C. 300, 111 S.E. 531, 532; Anderson County Road Dist. v. Pollard, 116 Tex. 547, 296 S.W. 1062; People ex rel. Shriver v. Frazier, 398 Ill. 386, 76 N.E.2d 33, 42; Sutherland's Stat.Construction, Section 2219. The complaint should, therefore, be dismissed.